IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MACNEIL AUTOMOTIVE PRODUCTS LIMITED, an Illinois Corporation, | ) ) ) | |
| MacNeil, | ) ) | No. 08 C 139 |
| v. | ) ) ) | Honorable Joan B. Gottschall |
| CANNON AUTOMOTIVE LIMITED, f/k/a CANNON RUBBER LIMITED, AUTOMOTIVE DIVISION, a United Kingdom Company, | ) ) ) ) ) | Magistrate Judge Arlander Keys |
| Defendant. | ) ) | |

**CANNON'S OPPOSITION TO MACNEIL'S MOTION TO ENJOIN DEFENDANT FROM PURSUING A COLLATERAL PROCEEDING IN A FOREIGN JURISDICTION**

Defendant, Cannon Automotive Limited ("Cannon"), by and through its attorneys, Freeborn & Peters LLP, responds as follows to MacNeil Automotive Products Limited's ("MacNeil") Motion to Enjoin Defendant from Pursuing a Collateral Proceeding in a Foreign Jurisdiction ("Motion"):

### INTRODUCTION

Despite MacNeil's best efforts to make the parties' dispute appear complex, at its base, their dispute is nothing more than Cannon's claim and MacNeil's potential counterclaims for breach of a supply agreement and conversion. Once it became clear that the parties were unable to resolve their dispute, Cannon, a United Kingdom company located in London, England, filed its claim first in a UK court – which is the appropriate forum to hear the parties' disputes. But instead of responding to that claim and pursuing its purported rights and remedies in the UK, MacNeil attempts an "end run" around Cannon's choice of forum by asking this Court to wrestle from the UK court jurisdiction over the matter.

The undisputed circumstances, however, compel a different outcome. The UK Court is the proper forum in which to resolve this dispute because the entirety of the supply relationship took place in the UK, including: (i) MacNeil solicited Cannon in the UK to enter into a supply arrangement; (ii) the supply agreement was negotiated in the UK; (iii) MacNeil placed its purchase orders in the UK; (iv) the automobile floor mat were designed, manufactured and tested in the UK; (v) Cannon's facilities and employees are located and reside in the UK; (vi) the tooling at issue (that allegedly has been converted) is located in the UK; (vii) the products were delivered to MacNeil in the UK; and (viii) MacNeil paid Cannon in the UK. (*See* Declaration of Robert Peacock, attached hereto as Exhibit. 1, at ¶¶ 9, 11, 14, 15, & 19-23.) Thus, when MacNeil failed to pay Cannon for products that were delivered to and accepted by MacNeil in the UK, Cannon, a UK company, rightfully brought its claim for breach of contract in the UK court system.

MacNeil ignores the operation of the parties' supply relationship when it contends that Cannon has engaged in forum shopping. It thus is not surprising that MacNeil's Motion to Enjoin Cannon from proceeding with its first-filed action lacks a basis in both fact and law. The entirety of MacNeil's Motion is based on the notion that the parties "agreed and understood" that any dispute between the two parties would be resolved in a U.S. Court. But MacNeil has at least a fundamental problem in so asserting. No such agreement or understanding existed. To be sure, MacNeil has not pointed to, and cannot point to, a written agreement, oral agreement or other evidence demonstrating (or even suggesting, although that is not the standard MacNeil must meet) that Cannon agreed to proceed in a U.S. Court.

MacNeil's contention that Cannon did not provide notice to MacNeil that it would file a lawsuit and that Cannon "raced to an English court" fairs no better. It ignores reality. Cannon

warned MacNeil that it would pass the matter to its counsel in the UK to recover the full amount due if MacNeil continued to breach its obligations. Even then, Cannon waited an additional five weeks beyond the end of the cure period before initiating its UK action.

In the end, MacNeil will not be deprived of its rights and remedies if this Court does not enjoin Cannon from proceeding with its first-filed UK action, as MacNeil purportedly fears. First, Illinois and UK choice of law principles direct application of English law. Second, English law provides MacNeil with remedies similar to those it seeks in this Court. Third, MacNeil has positioned its claims here as its defense to the merits of Cannon's UK claim. Thus, by pursuing its claims in this Court and seeking to enjoin the UK proceeding rather than bringing its claims in the UK proceeding, it is MacNeil who has created duplicative, wasteful litigation. For the reasons set forth herein, and in Cannon's Motion to Dismiss or, in the alternative, Stay, the Court should deny MacNeil's Motion to Enjoin.[1]

## ARGUMENT

Courts rarely enjoin litigants from proceeding in courts of independent countries. *Rauland-Borg Corp. v. TCS Management Group, Inc.*, No. 93 C 6096, 1995 WL 31569, at *3 (N.D. Ill. Jan. 26, 1995); *Black & Decker Corp. v. Sanyei America Corp.*, 650 F. Supp. 406, 408 (N.D. Ill. 1986); *Laker Airways v. Sabena Belgian World Airways*, 731 F.2d 909, 926-27 (D.C. Cir. 1984). Typically, courts consider three factors to determine whether an anti-suit injunction is warranted: (i) whether the parties are the same in both proceedings; (ii) whether the issues are

---

[1] Cannon filed its Motion to Dismiss or Stay concurrent with this opposition memorandum. Cannon understands that the Court intends to rule at the same time on the parties' respective motions. In light of the Court's intention to consider the motions together, and in an effort to avoid some duplication of facts and argument, Cannon incorporates herein the entirety of its Motion to Dismiss or Stay. Indeed, a ruling in favor of Cannon on its Motion to Dismiss or Stay will render moot MacNeil's Motion to Enjoin. *See, e.g., Klabo et. al., v. Myhre v. Easy Heat, Inc.*, Case No. 02 C 0877, 2004 WL 554794 at *1 (N.D.Ind. Feb. 6, 2004) (granting motion to stay federal case rendered the motion to enjoin state action moot).

the same in both proceedings; and (iii) whether the resolution of the *first* action would be dispositive of the action sought to be enjoined. *Black & Decker*, 650 F. Supp. at 409. MacNeil makes no serious attempt to assess these factors, with good reason. Application of these factors to the circumstances flips MacNeil's request on its head. As an initial matter, Cannon initiated its UK action first, as demonstrated herein and in Cannon's Motion to Dismiss or Stay. Therefore, to begin with, MacNeil cannot meet the third factor. Further, as shown, resolution of the UK action necessarily will resolve MacNeil's US claims because those claims have a second role as MacNeil's defenses to Cannon's UK cause of action. That is why MacNeil admits in its Motion that the two actions involve "the same parties and both sets of litigation will involve many of the same facts and issues." (Motion at 13.) And, MacNeil's contention that it cannot pursue its Illinois remedies in the UK is a non-starter. First, both Illinois and UK choice of law principles direct application of English law to MacNeil's claims. Second, even if the choice of law analysis presented a different outcome, the UK Court would apply Illinois. Third, English law provides remedies that are similar in nature to those MacNeil purports to pursue here.[2]

In light of the circumstances, including governing law, Cannon's UK action cannot be deemed duplicative, vexatious or harassing. That is a label best suited for MacNeil's U.S. action. MacNeil's Motion to Enjoin should be denied.

---

[2] Counsel for Cannon in the U.S. have been instructed as to the assertions of English law by Cannon's UK solicitors, Manches LLP. Richard G. Marshall, a solicitor with Manches LLP, affirms the accuracy of Cannon's representations in this opposition with respect to UK law. (*See*, Marshall Decl., attached hereto as Exhibit 2.)

I.  **Cannon Did Not Agree To Litigate Its Dispute In The U.S.**

MacNeil contends that the parties "agreed and understood" that their disputes would be resolved in a U.S. court. (Motion at 7-11.) But MacNeil has one significant problem in so asserting. It is fiction.

In short, there was no agreement or understanding that any dispute between the two parties would be "resolved in this forum." That is why the only evidence that MacNeil offers to the contrary is an email authored by David MacNeil suggesting that the parties meet in an attempt to resolve their differences. (*See* Motion, Ex. 6.) Nowhere in that email, or elsewhere, do the parties discuss litigation, let alone agreement on a particular choice of forum. Regardless, Cannon never would have agreed to litigate in the U.S. In light of MacNeil's solicitation of Cannon in the UK and the subsequent UK-centered supply arrangement, Cannon understood from the beginning of the relationship that any disputes between the parties requiring court intervention would be resolved in the UK, under UK law. Cannon would not conduct business otherwise, as it did business in over sixty different markets. MacNeil never stated or suggested anything to the contrary.

*E & J Gallo Winery v. Andina Licores S.A.*, 446 F.3d 984 (9th Cir. 2006), upon which MacNeil purports to rely, is readily distinguishable. That case involved a written agreement into which the parties had entered containing a valid and enforceable forum selection clause. *Id.* at 991-93. Here, MacNeil admits there is no such written agreement. And, MacNeil offers no credible evidence of any oral agreement that the parties would pursue their claims in a U.S. court – because no such evidence exists.

MacNeil seeks to downplay that oversight by suggesting that the parties merely "anticipated" litigation in the U.S. under American law. (Motion at 9.) That contention fails for two reasons. First, MacNeil provides no factual support for such a conclusion. Second, mere

5

"anticipation" would not demonstrate the concrete agreement MacNeil must necessarily show.[3] At no time, before, during or after the October 9, 2007 meeting in Chicago, did the parties discuss litigation in Illinois or elsewhere in the U.S. to resolve this dispute. (*See*, Exh. 1, at ¶ 48.) As indicated, Cannon never agreed, nor did it anticipate, that the U.S. courts would have jurisdiction over any disputes because it was always Cannon's position that UK law governed the supply relationship and that the parties would have disputes resolved in the UK court system. (*Id.* at ¶ 49.) In other words, Cannon never understood or agreed – expressly or impliedly – to litigate any issues with MacNeil in Illinois or in the U.S. because the entire supply relationship was performed in the UK. To suggest otherwise is, at best, misleading.

In an effort to save its motion, MacNeil claims – without citing any legal authority – that the UK action should be enjoined because MacNeil could be "potentially liable" for consumer claims that "may arise" in an American court. (Motion at 10 – 11.) Like MacNeil's other contentions, this has no merit. Forum selection for the Cannon/MacNeil disputes does not depend on hypothetical, future litigation to be initiated by third parties in an unknown forum. It is doubtful that end-consumers could or would initiate litigation against Cannon in the first place. Moreover, as Cannon explained in its Motion to Dismiss or Stay, under English law, an intermediate buyer (MacNeil) may be able to pass on damages it had to pay to its buyer up the chain to its seller. In other words, MacNeil's rights are fully protected in the UK Court.

## II.     MacNeil Cannot Show That Cannon's UK Action is Vexatious or Oppressive.

There is nothing vexatious or harassing about Cannon's UK action, as MacNeil would have the Court find in support of an injunction. As shown herein and in Cannon's Motion to

---

[3] Nor can MacNeil demonstrate an agreement by looking to its contract with Hyundai. (Mot. at 10.) That contract is irrelevant here because Cannon is not a party thereto. And, in any event, the Hyundai/MacNeil agreement has an express choice of law and forum provision providing for application of California law and litigation in the Orange County Superior Court, State of California. (Mot., Ex. 3 at 9.)

6

Dismiss or Stay, Cannon properly first-filed its claim against MacNeil in the UK Court. The cases upon which MacNeil relies thus are inapposite. *See United States Commodity Futures Trading Comm. v. Lake Shore Asset Mgm't Ltd.,* No. 07 C 3598, 2007 WL 2915647, at *21 (N.D. Ill. Oct. 4, 2007) (holding second-filed foreign suit was an attempt to do an "end-run" around court's jurisdiction); *Laker Airways Ltd. v. Sabena, Belgian World Airlines*, 731 F.2d 909, 930 (D.C. Cir. 1984) (holding second-filed foreign suit was designed solely to block district court from proceeding with antitrust case).

### A.  Cannon's Action Was Filed First and Therefore is Not Duplicative

As there is no dispute that Cannon's action was filed first, it is difficult to understand how Cannon's first-filed action could be "gratuitously duplicative." In fact, the UK action was the natural result of unsuccessful negotiations between the parties. MacNeil alleges that Cannon failed to "inform[] MacNeil of its intentions [to file the UK action]" and "raced to the courthouse" to file the UK action. (Motion at 2.) As shown, the facts and record contradict MacNeil's allegations. Cannon attempted to negotiate a business solution of this matter with MacNeil at a meeting between the two parties in Chicago on October 9, 2007. (Ex. 1 at ¶ 46.) However, the parties were unable to resolve this dispute. (*Id.* at ¶ 47.) As a result, on October 16, 2007, one week after the meeting and over a month prior to actually filing its complaint in the UK, Cannon informed MacNeil that if MacNeil did not pay the outstanding invoices within seven days, Cannon would take legal action. (*See, Id.* at ¶ 50; Letter dated October 16, 2007 from Cannon to MacNeil, attached hereto as Exhibit 3.) MacNeil ignored the deadline. (Ex. 1 at ¶ 49.) Ten days later, a follow up letter also was sent by Cannon and ignored by MacNeil. (*See,* Letter dated October 26, 2007 from Cannon to MacNeil, attached hereto as Exhibit 4.) As a

result, Cannon filed its action on November 30, 2007, almost six weeks after it warned MacNeil it would take legal action and almost six weeks before MacNeil filed this action. (*Id.* at ¶ 51.)

Courts typically do not enjoin first-filed actions. Indeed, in each case that MacNeil cites save for *E. & J. Gallo*, the parties seeking an anti-suit injunction sought to enjoin *second-filed*, foreign actions. And, in *E. & J. Gallo*, the court enjoined the first-filed foreign action because, as previously noted, the parties had entered into a written agreement that contained a forum selection that required the parties to litigate in California and U.S. policy promotes enforcement of written contracts. *Id.*, 446 F.3d at 991-95. Moreover, the court noted that the defendant's Ecuador lawsuit was "potentially fraudulent litigation" because it was premised on a previously repealed decree which would have severely impaired Gallo's ability to defend itself. *Id.* at 993.

Cannon properly filed its UK action first. And, MacNeil could fully and fairly assert its position in the UK. But by choosing to pursue its claims and defense here instead, it is MacNeil who has initiated duplicative, vexatious litigation. Needless to say, its motion to enjoin should be denied.

### B. MacNeil, Not Cannon, is Forum Shopping.

MacNeil's accusations of "forum shopping" are silly. As indicated, every pertinent actions concerning the parties' relationship occurred in the UK:

- MacNeil knowingly initiated contact with Cannon, a UK company and negotiations took place in the UK;

- MacNeil placed its orders in the UK;

- Cannon designed and manufactured the automotive floor mats in the UK;

- The relevant documents such as design drawings and specifications are in the UK;

- The designers and engineers of the mats are in the UK;

- The mats were delivered to MacNeil in the UK; and

- MacNeil paid Cannon in the UK.

(Ex. 1, at ¶¶ 9, 11, 14, 15, & 19-23.) In light of the UK-centered contacts, Cannon's decision to file its action in the UK was measured, logical and appropriate. As a result, MacNeil has not and cannot show that the UK action is vexatious or oppressive litigation.

### III.   MacNeil Will Not Be Deprived of any Rights or Remedies in the UK Action.

MacNeil fails to make even a cursory showing that it would be deprived of rights and remedies if it were to litigate its claims in the UK. In its Motion, MacNeil boldly asserts that it "cannot achieve a full and fair adjudication of its claims in an English court and would be stripped of substantial remedies and rights in such an action." (Motion at 12.) MacNeil does little, if anything, to support this statement.[4] *Id.* The only purported deprivations on which MacNeil elaborates at all are (i) its contention that it cannot pursue in the UK a claim for violation of the Illinois Consumer Fraud Act claim and; (ii) it contention that it would lose the right to a trial by jury. Both contentions are unavailing.

#### A.   The UK Court Provides Adequate Remedies for MacNeil.

MacNeil will not be deprived of its rights and remedies in the UK action. UK solicitors for Cannon have advised Cannon's US counsel that all of MacNeil's claims relating to the supply agreement can be asserted as counterclaims. Under UK law, claims can be brought at common law for damage arising from fraud and there is also legislation to protect consumers. Moreover, in the UK court, the norm is that the Court awards the prevailing party the legal costs of the action as additional relief. Thus, it is difficult to ascertain how it will be "deprived" of any substantial right in the UK court. Regardless, there is no requirement that a foreign court provide

---

[4] MacNeil, through the Affidavit of Kent Phillips, claims that the scope of damages available under English law may not be co-extensive with those available in Illinois, but fails to undertake any analysis or explanation to support such a contention.

9

*equal* rights and remedies. *See, e.g., Kamel v. Hill-Rom Co.*, 108 F.3d 799, 803 (7th Cir. 1997) ("An alternative forum is adequate when the parties will not be deprived of all remedies or treated unfairly."); *Exter Shipping Ltd. v. Kilakos*, 310 F. Supp. 2d 1301, 1320 (N.D.Ga. 2004) (the adequacy "standard does not require that the alternative forum provide the exact remedy sought from the domestic court"; forum is "adequate" if it provides a sufficient remedy). A forum would be inappropriate only where the remedy is so clearly inadequate or unsatisfactory that it is no remedy at all. *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 254 (1981). Although the *Kamel, Exter and Piper* courts discussed adequacy in the context of *forum non conveniens*, the analysis applies equally here. The UK court is an adequate forum for MacNeil's claims.

In addition, regardless of where MacNeil's claims are litigated, UK law will apply to them.[5] Illinois' choice of law principles direct application of English law because of the UK-centered nature of the parties' supply relationship. *See, Midwest Grain Products of IL, Inc. v. Productization, Inc.*, 228 F.3d 784, 787-88 (7th Cir. 2000). Application of UK choice of law principles results in the same outcome. Thus, Illinois Uniform Commercial Code and Illinois warranty law would not apply to this dispute in the first place.[6]

More important, even if MacNeil cannot pursue a claim under Illinois Consumer Fraud Act in the UK action, it will not be prejudiced in any way. Illinois Courts have held that in cases

---

[5] As this court knows, when a federal court exercises diversity jurisdiction over state law claims, the court must apply the choice-of-law rules of the forum state to determine the applicable substantive law. *Hinc v. Lime-O-Sol Co.*, 382 F.3d 716, 719 (7th Cir. 2004). Thus, if the Court uses Illinois' choice of law rules, it is clear that UK law governs the claims because where – as here – no contractual choice of law provision dictates the forum, Illinois courts apply the "most significant contacts" test set forth in the Restatement (Second) of Conflicts §188 (1971) to contract disputes. *Wildey v. Springs*, 47 F.3d 1475, 1481-83 (7th Cir. 1995). Under this test, the court considers five factors in determining which state has the most significant ties to the parties' agreement(s): the place of contracting, negotiation, performance, location of the subject matter of the contract, and the domicile, residence, place of incorporation, and business of the parties. *Wildey*, 47 F.3d at 1483.

where an English court is unable to adjudicate a claim under the Illinois Consumer Fraud Act, a party is not deprived of any remedy or treated unfairly because "English courts are capable of adjudicating [] other common law fraud causes of action." *Phillips Electronics, N.V., v. New Hapshore Insurance Co.*, 312 Ill. App. 3d 1070 1087, 728 N.E.2d 656, 669 (1st Dist. 2000) (affirming dismissal of case, including a claim under Illinois Consumer Fraud Act, pursuant to the doctrine of *forum non conveniens* because English court was more appropriate forum to resolve dispute.) Thus, MacNeil's complaints about the inadequacy of the UK court are meritless.

### B. Right to Jury Trial Is Not Dispositive.

MacNeil's jury argument also fails. Numerous courts have recognized that the U.S. and the UK share the same common law and that UK courts are an adequate forum. *See e.g., Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Kozeny*, 115 F. Supp. 2d 1243 (D. Colo. 2000); *Goldhammer v. Dunkin' Donuts, Inc.*, 59 F. Supp. 2d 248 (D. Mass. 1999). Other courts have found that trial by jury is not a compelling reason to find that a foreign court is an inadequate alternative forum. *See e.g., National Union*, 115 F. Supp. 2d at 1249 (even though parties in England have less access to discovery and no jury trial, they can return to district court following conclusion of English action); *Grammer, Inc. v. Custom Foam Systems, Ltd.*, 482 F. Supp. 2d 853, 859 (E.D. Mich. 2007) (granting stay of federal litigation in favor of Canadian lawsuit despite fact that in Canada, there is no constitutional guarantee to a jury trial.). Thus, the fact that a jury will not hear all of MacNeil's claims is not a persuasive reason to trample on the UK court's jurisdiction.

---

[6] Even if Illinois law governed MacNeil's claims, MacNeil does not assert that a UK court would not apply Illinois law. We are advised by Cannon's UK solicitors that if the English Court were to determine that U.S. law applied to the parties' disputes, the English Court would apply U.S. law.

## VI. International Comity Favors a Denial of the Injunction.

Considerations of international comity also dictate that the Motion should be denied. In essence, MacNeil requests an order that prevents a UK company from asking the UK courts for the protection of its rights under English laws regarding a supply agreement that was solicited, negotiated, performed, paid for, and from which the products were delivered in the UK. MacNeil has failed to provide convincing reasons for this Court to take the extraordinary measure of interfering with the jurisdiction of that competent foreign tribunal. Moreover, courts in this district have found that where a "foreign action is pending rather than decided, comity counsels that priority generally goes to the suit filed first." *Basic*, 949 F. Supp. at 1340 (N.D. Ill. 1996) (citation and internal quotation marks omitted). Consequently, this Court should accord deference to foreign adjudication of the parties rights under the supply agreement.

Surprisingly, MacNeil argues that this Court should preserve its jurisdiction because Cannon's UK action is a "shake-down" for payment. (Motion at 12.) But, as the facts indicate, it is MacNeil who has brought trumped-up claims. Moreover, it is self-evident that English courts likewise have "an interest in protecting its citizens, including corporate citizens, from trumped-up multi-million dollar claims." (*See*, Motion at 12, citing, *Allendale Mut. Ins. Co.*, 10 F.3d at 431.) Indeed, international comity requires that the rightful jurisdiction of the UK court be recognized here. *See, Ingersoll Mill. Mach. Co. v. Granger*, 833 F.2d 680, 685 (7th Cir. 1987)("While the American interest can hardly be termed insubstantial, the Belgian interest also must be recognized as very significant. International judicial comity is an interest not only of Belgium but also the United States.")

In light of the particular facts of this case, MacNeil's request for an anti-suit injunction is improper and likely will impair international comity.[7] Such an order would be hegemonic and would unnecessarily infringe on the sovereignty of the UK court – the court that first retained jurisdiction over the dispute. *See, e.g., Gau Shan Co., v. Bankers Trust Co.*, 956 F.2d 1349, 1354 (6th Cir. 1992) (reversing anti-suit injunction and holding "Comity dictates that foreign antisuit injunctions be issued sparingly and only in the rarest of cases. The days of American hegemony over international economic affairs have long since passed. The United States cannot today impose its economic will on the rest of the world and expect meek compliance, if indeed it ever could."). Moreover, the *Goldhammer* court's holding is instructive here, "[b]ecause the United States and England share the same common law heritage, deference to British proceedings is consistent with the notions of international comity." *Goldhammer*, 59 F. Supp. 2d at 254-55. Accordingly, international comity favors denial of the Motion.

## CONCLUSION

Cannon agrees with MacNeil that all of the disputes between the two parties at issue here should be decided in one forum. That is precisely why Cannon has filed concurrent herewith its Motion to Dismiss or Stay. For all of the reasons outlined therein, this Court should deny MacNeil's motion, stay this action and direct the parties to resolve their dispute in the UK. In the In the event that the Court declines to stay this action in favor of the first-filed UK action, the

---

[7] The Court should note that in the UK action, Cannon similarly has applied for an anti-suit injunction requesting the UK court to enjoin MacNeil from pursuing its action in this Court. (See, Witness Statement of Richard Gary Marshall in Support of Application for Anti-Suit Injunction, attached hereto as Exhibit 5.) If both courts grant the respective injunctions, there will be no doubt that an injunction here, in the second-filed matter, would pose a substantial threat to international comity.

Court still should deny MacNeil's motion and permit each forum to proceed with the case before it.[8]

                                      Respectfully submitted,

                                      CANNON AUTOMOTIVE LIMITED


                              By  \_\_/s/ John T. Shapiro_____
                                      One of Its Attorneys

William N. Howard
John T. Shapiro
Terrence J. Sheahan
Suzanne M. Rose
Freeborn & Peters LLP
311 South Wacker Drive, Suite 3000
Chicago, Illinois 60606
(312) 360-6000

Dated: February 20, 2008


#1478270

---

[8] *See, EuroMarket Designs, Inc. v. Crate & Barrel, Ltd.*, 96 F. Supp. 824, 845 (N.D. Ill. 2000); *Black & Decker Corp.*, 650 F. Supp. at 408 (holding parallel actions should normally be allowed to continue because "the mere filing of a suit in one forum does not cut off the pre-existing right of an independent forum to regulate matters subject to its prescriptive jurisdiction").

## CERTIFICATE OF SERVICE

The undersigned, being one of the attorneys of record in the above cause, certifies that he this day caused a copy of **Cannon's Opposition to MacNeil's Motion to Enjoin Defendant from Pursuing a Collateral Proceeding in a Foreign Jurisdiction** to be served upon the attorneys listed below via the Northern District of Illinois, Eastern Division, ECF filing system, and as otherwise noted, on this 20th day of February, 2008.

TO:　Robert S. Grabemann
　　　Timothy M. Schaum
　　　Daspin & Aument
　　　227 West Monroe Street
　　　Suite 3500
　　　Chicago, IL 60601
　　　(312) 258-1600
　　　Fax: (312) 258-1955
　　　rgrabemann@daspinaument.com

　　　　　　　　　　　　　　　　　　　　　　/s/ John T. Shapiro

1485161v3/26168-0001