IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MACNEIL AUTOMOTIVE PRODUCTS LIMITED, an Illinois Corporation, | ) ) ) | |
| Plaintiff, | ) ) | No.  08 C 139 |
| v. | ) ) ) | Hon. Joan B. Gottschall |
| CANNON AUTOMOTIVE LIMITED, f/k/a CANNON RUBBER LIMITED, AUTOMOTIVE DIVISION, a United Kingdom Company, | ) ) ) ) ) | Magistrate Arlander Keys |
| Defendant. | ) | **JURY TRIAL DEMANDED** |

**MACNEIL'S MOTION FOR LEAVE TO WITHDRAW ITS ANTI-SUIT APPLICATION**

Plaintiff MacNeil Automotive Products Limited ("MacNeil"), by its undersigned attorneys, moves the Court for leave to withdraw its Motion to Enjoin Defendant from Pursuing a Collateral Proceeding in a Foreign Jurisdiction. ("MacNeil's Anti-Suit Motion")  In support of its Motion, MacNeil states as follows:

1. MacNeil is a manufacturer and supplier of automotive accessories, including, among other things, floor liners and mats.  Defendant Cannon Automotive Limited f/k/a Cannon Rubber Limited ("Cannon") is a manufacturer and supplier of rubber floor mats for automobiles.

2. In 1989, MacNeil became Cannon's sole U.S. automotive products distributor.  In 2004, MacNeil was awarded a contract by the American division of Hyundai Motors Corporation ("Hyundai") for the supply of composite floor mats consisting of a rubber base with a carpet inset.  The mats were to go in all Hyundai Tucson vehicles sold in the United States.  Cannon, in turn, was to manufacture and supply the mats to MacNeil for sale to Hyundai.

3. Quality issues arose with the first shipment of mats from Cannon to MacNeil. Specifically, the mats exhibited major flaws in carpet adhesion and cracked corners in the rubber. Over the next three years the parties attempted to address the quality problems with no real success. Eventually, Hyundai returned over 18,000 sets of mats to MacNeil which MacNeil was forced to replace with non-composite mats at MacNeil's expense. MacNeil then looked to Cannon for a credit for the defective mats, but Cannon refused to provide one. As a result, MacNeil offset the amounts due it by withholding payment on invoices for other mats provided by Cannon.

4. In October 2007, the parties' senior representatives met in Downers Grove, Illinois to try to resolve the disputes existing between them. Instead of coming to a resolution, the parties agreed to sever their business relationship. Thereafter, and with no notice to MacNeil, Cannon filed suit in England on November 30, 2007 seeking the amounts due on its unpaid invoices. MacNeil was served with this lawsuit in the United States on December 20, 2007.

5. On January 7, 2008, MacNeil filed its lawsuit against Cannon in this Court. The next day MacNeil filed its Anti-Suit Motion seeking to enjoin Cannon from proceeding with its lawsuit against MacNeil in England. Cannon, in turn, filed its own Anti-suit Motion in England on February 18, 2008 seeking to enjoin MacNeil from proceeding with its claims against Cannon in this forum. In addition, Cannon has filed a motion in this Court seeking a dismissal or stay of this action pending the outcome of the English proceedings.

6. As this Court can well imagine, these procedural wranglings are expensive, time-consuming and have nothing to do with the merits of the parties' claims. Therefore, MacNeil has represented to Cannon's English counsel, and soon will submit to the English court, that it no longer will defend Cannon's claims for payment on its invoices and that Cannon is free to take

whatever steps it deems appropriate to obtain a judgment in the United Kingdom against MacNeil on its invoice claim.  By so doing, the litigation on Cannon's invoice claim in the United Kingdom – for all practical purposes – will be over.

7.      This action will render MacNeil's Anti-suit Motion moot (and arguably will render moot Cannon's motion to dismiss or stay this litigation, which is currently being briefed before this Court).  The parties can then proceed in this Court on MacNeil's substantial claims under Illinois law against Cannon regarding the harm it has suffered as a result of Cannon's defective products – in the form of lost profits, harm to business reputation, and other damages, and for the return of the tooling which MacNeil loaned to Cannon to assist it in its manufacturing of products to be sold in the U.S.  The upshot is that this Court, and the English Court, will be spared the various jurisdictional challenges that are currently pending.  Furthermore, the parties will be able to proceed directly before this Court to the merits of MacNeil's claims.

WHEREFORE, for the foregoing reasons, MacNeil respectfully requests that the Court enter an Order allowing MacNeil to withdraw its Anti-Suit Motion.

Respectfully submitted,

**MACNEIL AUTOMOTIVE PRODUCTS LIMITED**

Dated:  March 6, 2008            By:      /s/ Robert S. Grabemann
                                         One of Its Attorneys

Robert S. Grabemann
Timothy M. Schaum
DASPIN & AUMENT, LLP
227 West Monroe Street
Suite 3500
Chicago, Illinois 60606
(312) 258-1600

**CERTIFICATE OF SERVICE**

   The undersigned, an attorney, hereby certifies that he caused a copy of the foregoing MACNEIL'S MOTION FOR LEAVE TO WITHDRAW ITS ANTI-SUIT APPLICATION via electronic filing, on or about the 6th day of March, 2008 on:

William N. Howard
John T. Shapiro
Terrence J. Sheahan
Suzanne M. Rose
Freeborn & Peters LLP
311 South Wacker Drive
Suite 3000
Chicago, Illinois 60606
(312) 360-6000
(312) 360-6520

              /s/   Robert S. Grabemann
                Robert S. Grabemann