IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MACNEIL AUTOMOTIVE PRODUCTS LIMITED, an Illinois Corporation, | ) ) ) | |
| Plaintiff, | ) ) | No. 08 C 139 |
| v. | ) ) ) | Hon. Joan B. Gottschall |
| CANNON AUTOMOTIVE LIMITED, f/k/a CANNON RUBBER LIMITED, AUTOMOTIVE DIVISION, a United Kingdom Company, | ) ) ) ) ) | Magistrate Arlander Keys |
| Defendant. | ) | **JURY TRIAL DEMANDED** |

**MACNEIL'S RESPONSE TO CANNON'S
MOTION TO DISMISS OR STAY PROCEEDINGS**

Plaintiff MacNeil Automotive Products Limited ("MacNeil"), by its undersigned attorneys, hereby responds to and opposes Cannon Automotive Limited's ("Cannon") motion to dismiss or stay proceedings.

**INTRODUCTION**

The litigation in England, for all practical purposes, is now over. MacNeil has informed Cannon and the English court that it will no longer defend against Cannon's invoice claims in the United Kingdom. MacNeil also has filed a motion to withdraw its antisuit motion before this Court. Consequently, Cannon's motion to stay or dismiss has been rendered moot and should be denied in its entirety. Moreover, even if the litigation in England was still pending, Cannon's motion to dismiss or stay this litigation should be denied on its merits as, under the applicable facts and law, MacNeil is entitled to proceed on its claims before this Court. MacNeil respectfully requests that the Court deny Cannon's motion to dismiss or stay.

## **ARGUMENT**

Instead of focusing on the legal analysis relevant to its motion, Cannon spends the first 8 pages of its one-and-a-half spaced brief arguing the merits of the case. Such a discussion is entirely inappropriate at this stage of the litigation. Nonetheless, in the sections that follow, MacNeil will refute many of the factual misrepresentations that Cannon purports to rely on to support its motion. In any event, Cannon's motion is now moot because the litigation, for all practical purposes, has concluded in England. Consequently, on this point alone, Cannon's motion to dismiss or stay this action based on the pendency of the English action should be denied.

However, assuming *arguendo* that Cannon had a reason to continue pursuing its motion to a full consideration on the merits, it still should be denied in its entirety. First, the Illinois action and English action are not parallel. The English action by Cannon is simply an invoice claim that does not cover the defective mats that are at issue in the Illinois litigation. In other words, the English action is merely an account stated claim covering a different grouping of mats. In contrast, MacNeil's Illinois lawsuit seeks damages for certain other defective mats provided by Cannon, a declaratory judgment that Cannon is liable for any damages resulting from the defects, and damages suffered by MacNeil – such as lost profits and harm to business reputation – due to Cannon's supply of defective mats.

Despite Cannon's mischaracterizations, MacNeil's claims are not "defenses" to Cannon's English lawsuit. To the contrary, MacNeil's claims are *offensive* and separate and distinct from the claims that Cannon brought in England. Moreover, in this forum MacNeil has a claim for conversion of its tooling that is entirely unrelated to Cannon's supply of defective mats and the English proceeding. The conversion claim alone requires a finding that the English and

Illinois actions are not parallel. Furthermore, the legal presumptions and the ten factors relevant to an analysis under the *Colorado River* doctrine – when viewed in the appropriate factual light – weigh heavily in favor of exercising jurisdiction over MacNeil's claims. Thus, even under a consideration of Cannon's motion on the merits, the Court should deny Cannon's motion to dismiss or stay the instant lawsuit.

> **I.     Legal standards for a *Colorado River* doctrine motion to dismiss or stay**

The only basis on which Cannon brings the instant motion is founded upon the *Colorado River* doctrine.[1] However, the full legal standard, such as the burden of proof and certain presumptions applicable to a motion to stay or dismiss under the *Colorado River* doctrine in this Circuit, are noticeably missing from the *movant's* papers. In any event, *Colorado River* permits a district court, under exceptional circumstances, to abstain from hearing a suit and await the outcome of parallel proceedings as a matter of wise judicial administration. Of course, a requisite element of applying this doctrine *requires* that a parallel proceeding is pending. As explained in detail below, the proceeding in England, for all practical purposes, has ended. On this basis alone Cannon's motion should be denied in its entirety by this Court as moot.

"Federal courts have a 'virtually unflagging obligation' to exercise the jurisdiction conferred on them by Congress." AAR Int'l, Inc. v. Nimelias Enterprises S.A., 250 F.3d 510, 517 (7th Cir. 2001) (citation omitted). "A federal court cannot lightly abjure its responsibility to assert jurisdiction." Lumen Construction, Inc. v. Brant Construction Co. Inc., 780 F.2d 691, 694 (7th Cir. 1985). Under "limited" and "exceptional" circumstances, a federal district court may stay or dismiss an action when there is an ongoing parallel action in state court. Colorado River

---

[1]     If Cannon had any other bases to support its motion (such as *forum non conveniens*), then it was required to raise said arguments in its opening brief. Therefore, any additional arguments – apart from those based on the *Colorado River* doctrine – have been waived. See Local 710 I.B.T. Pension Fund v. United Parcel Service, Inc., No. 02-C-4420, 2003 U.S. Dist. LEXIS 19457, at *6 n.2 (N.D. Ill. Oct. 28, 2003) ("it is axiomatic that arguments raised for the first time in a reply brief are waived.").

Water Conservation District v. United States, 424 U.S. 800, 818 (1976).  "[I]f there is any substantial doubt that the parallel litigation will be an adequate vehicle for the complete and prompt resolution of the issues between the parties, it would be a serious abuse of discretion for the district court to stay or dismiss a case in deference to parallel litigation."  AAR Int'l, 250 F.3d at 518.

The court's task is "not to find some substantial reason for the exercise of federal jurisdiction by the district court; rather, the task is to ascertain whether there exist 'exceptional' circumstances, the 'clearest of justifications,' that can suffice under *Colorado River* to justify the *surrender* of that jurisdiction."  Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 25-26 (1983) (emphasis in original).  Indeed, in light of this authority the Seventh Circuit has recognized a general presumption against the abstention that Cannon advocates here.  AXA Corp. Solutions v. Underwriters Reinsurance Corp., 347 F.3d 272, 278 (7th Cir. 2003).

## II. Cannon's motion to dismiss or stay is now moot and should be denied in its entirety.

Apparently concerned about its likelihood of success with regard to the instant motion, Cannon took a second bite at the apple and filed its own antisuit motion before the English court on February 18, 2008.  See Ex. 1.  At a scheduling hearing on February 28th, the English court expressed concern that MacNeil had filed a motion for antisuit and scheduled the hearing for determining Cannon's English antisuit motion for March 13th.  In the interim, MacNeil decided that it did not make economic sense to defend against Cannon's claim on the unpaid invoices.  This decision was hastened by the extremely high cost of litigation in the United Kingdom (especially given the current exchange rate) compared to the amount being sought on Cannon's invoice claims.  Consequently, MacNeil informed Cannon and the English

-4-

court that it will no longer defend against Cannon's invoice claims in the English court.  See Exs. 2 and 3.

Here, Cannon moved to dismiss or stay this lawsuit "pending resolution of Cannon's first-filed UK (sic) lawsuit."  However, as a result of MacNeil's actions discussed above, Cannon's first-filed U.K. action now has been resolved.  See Ex. 4, Affidavit of Kent Phillips at ¶¶ 5-6.  MacNeil will no longer defend Cannon's invoice claims in England.  Thus, the purpose of Cannon's instant motion to dismiss or stay has been rendered moot.  Moreover, MacNeil's actions clearly refute the main points of Cannon's instant motion, to wit, this lawsuit is merely a procedural maneuver and that MacNeil's action on the merits of its claims is weak. In any event, there is no longer a parallel proceeding pending.  Therefore, Cannon's motion is now moot and should be denied in its entirety.

### III.     The Illinois lawsuit and the English action are not parallel.

For a stay or dismissal under the *Colorado River* doctrine to be appropriate, the actions must be parallel.  Actions are parallel if "substantially the same parties are litigating substantially the same issues simultaneously in two fora."  Schneider Nat'l Carriers, Inc. v. Carr, 903 F.2d 1285, 1287 (7th Cir. 1988).  However, "any doubt regarding the parallel nature of the foreign suit should be resolved in favor of exercising jurisdiction…"  Eisenmann Corp. v. Tek-Mor, Inc., No. 03-C-4375, 2004 U.S. Dist. LEXIS 1517, at *12-13 (N.D. Ill. Feb. 4, 2004).  "If the two cases are not parallel, the *Colorado River* doctrine does not apply."  TruServ Corp. v. Flegles, Inc., 419 F.3d 584, 592 (7th Cir. 2005).

Surprisingly, Cannon devotes only two short paragraphs on this crucial issue. Here, it is true that the parties are identical in the English and Illinois action.  However, the issues in the two actions are nowhere near the same.  Resolution of Cannon's claim for unpaid

invoices in England in no way will resolve MacNeil's claims in Illinois based on the supply of a different grouping of defective mats. The parties' claims involve entirely different sets of mats. Knowing this, Cannon takes the following statement entirely out of context from MacNeil's motion to enjoin – "both sets of litigation will involve many of the same facts and issues" – and argues that "MacNeil may not avoid that admission now." Mot. at 9.

Of course, Cannon fails to mention that in the same paragraph MacNeil argues that Illinois is the proper forum because it recognizes Cannon's account stated cause of action, whereas England does not appear to recognize many of the claims MacNeil asserts against Cannon in MacNeil's Illinois lawsuit. Moreover, Cannon fails to inform the Court that MacNeil was simply pointing out that the same witnesses that would likely be involved in Cannon's English action would likely also be involved in MacNeil's lawsuit pending in Illinois, and it would be much more convenient to proceed entirely in Illinois on both MacNeil's and Cannon's claims.

Further, even if MacNeil could bring all of its claims as a counterclaim in the English court, as Cannon states, this does not mean that the actions are parallel. Indeed, "[n]o authority … suggests that a federal action is parallel to a state or foreign action for *Colorado River* abstention purposes when the claim upon which the federal action is based is pleadable as a compulsory counterclaim in the other action." AAR Int'l, 250 F.3d at 522 (explaining and ***rejecting*** the argument that the actions were parallel because the action in federal court would be a compulsory counterclaim in the foreign action that would be "'disposed of' one way or another … [because] it would either be asserted as a counterclaim in the foreign action and decided there, or lost if not asserted before the conclusion of the foreign action. Either way, the conclusion of

the foreign action would leave nothing left for the federal court to decide."); see also TruServ, 419 F.3d at 592-93 (same).

Cannon, citing MacNeil's second count for declaratory judgment, also argues that: "each cause of action that MacNeil asserts against Cannon serves as MacNeil's defense to Cannon's UK (sic) claim." Mot. at 9. With all due respect, this assertion is simply preposterous. MacNeil's claims, apart from its declaratory judgment claim, serve as no defense to Cannon's invoice claim. To the contrary, MacNeil seeks the damages it incurred with regard to Cannon's supply of defective mats – a group of mats entirely different than those concerning Cannon's English lawsuit – and MacNeil seeks damages in the million dollar amount, for its costs, harm to business reputation, lost profits, etc. To argue that the claims MacNeil asserts merely serve as a defense to Cannon's English lawsuit is disingenuous at best. Moreover, Cannon has yet to address the question regarding how MacNeil's claim for conversion would be a defense to Cannon's account stated claim. Clearly, it is not.

Finally, apart from the separate and distinct claims involving a different grouping of defective mats, MacNeil's federal action has an entirely separate cause of action that has nothing to do with floor mats – its count for the conversion of its tooling. This fact alone requires the denial of Cannon's motion. Indeed, "[b]ecause [a] federal action contained claims independent of the state action, the court could not find that litigation in a foreign court would resolve all claims in the federal action." Comtel Technologies Inc. v. Schwendener, Inc., No. 04-C-3879, 2005 U.S. Dist. LEXIS 8370, at *48 (N.D. Ill. Feb. 22, 2005) (holding federal and foreign action were not parallel) (citation omitted). Consequently, because the Illinois and English actions clearly are not parallel, the Court should deny Cannon's motion to stay or dismiss this litigation.

**IV.    The *Colorado River* factors weigh heavily in favor of denying Cannon's motion.**

MacNeil strongly argues that the two actions are not parallel and that fact alone should end the inquiry. However, even if the Court determines that an analysis of the *Colorado River* factors is necessary, these factors favor MacNeil. If Cannon's brief is to be believed, then it may be the first time in the history of the *Colorado River* doctrine that *every* factor weighs in one side's favor. Cannon's "advocacy" notwithstanding, an objective view of the facts – as they truly are – make it clear that the Court should exercise its jurisdiction here. Further, unlike Cannon, MacNeil will not address the merits in great detail.[2] However, MacNeil will respond where appropriate to Cannon's factual misrepresentations with regard to applying the *Colorado River* factors. Under the *Colorado River* doctrine, ten factors (not nine) may be considered in deciding whether the circumstances are exceptional enough to support a stay:

> 1) whether the state has assumed jurisdiction over the property; 2) the inconvenience of the federal forum; 3) the desirability of avoiding piecemeal litigation; 4) the order in which jurisdiction was obtained by the concurrent forums; 5) the source of governing law, state or federal; 6) the adequacy of state-court action to protect the federal plaintiff's rights; 7) the relative progress of state and federal proceedings; 8) the presence or absence of concurrent jurisdiction; 9) the availability of removal; and 10) the vexatious or contrived nature of the federal claim.

Caminiti & Iatarola, Ltd. v. Behnke Warehousing, Inc., 962 F.2d 698, 700 (7th Cir. 1992). Each relevant factor is addressed below. Before one considers each relevant factor, however, it is important to note that in this Circuit – as with the presumption in favor of exercising jurisdiction – the "balance is heavily weighted in favor of the exercise of federal jurisdiction." Schneider, 903 F.2d at 1157-58.

---

[2]    For the most part, MacNeil refers the Court to its Complaint, which must be accepted as true at this stage of the litigation, regarding the merits of its claims.

### A. Jurisdiction over person and property.

Cannon is correct in its assertion that the English court has in rem jurisdiction over the property wrongly held by Cannon at its location in London. However, as Cannon has conceded in its motion, this Court has personal jurisdiction over Cannon and can easily compel Cannon to return MacNeil's tooling or reimburse MacNeil for the same. Mot. at 14. This factor therefore is likely neutral.

### B. Litigation in England would be more inconvenient than in Illinois.

Again, there is no longer any litigation pending in England, so it is difficult to see how that litigation would be more convenient. Moreover, for some inexplicable reason, Cannon states: "MacNeil has destroyed the only physical evidence located in the U.S. important to its claim – the very mats it claims defective." Mot. at 10. Indeed, Cannon apparently feels this "fact" is so important that they place it in bold and italics in another section of their motion. Mot. at 2. However, despite Cannon's assertions that MacNeil destroyed all of the defective mats, this could not be further from the truth. ***MacNeil has approximately 1,000 lbs of defective Cannon mats at its locations in Downers Grove, Illinois.*** See Ex. 5, Declaration of Allan Thom at ¶ 8.

This should be of no surprise to Cannon, as Mr. MacNeil informed Mr. Peacock of this very fact at the parties' last meeting in Chicago on October 9, 2007 when he told Mr. Peacock that MacNeil had hundreds of sets of the defective mats and asked Mr. Peacock directly if he would like to go review all of the defective Cannon mats. Mr. Peacock declined this offer. See Ex. 6, Declaration of David MacNeil at ¶ 9. Even more confusing about this claim that MacNeil destroyed all the evidence is that David MacNeil showed Mr. Peacock at least three to five samples of the defective mats at this very meeting. Id. It is true that MacNeil destroyed

more than 200 pallets of defective Cannon floor mats, but that was only after MacNeil had repeatedly requested that Cannon visit Chicago, not only to review the defective mats for themselves, but to help with the destruction process. Id. at ¶ 7. After all, MacNeil could not store these defective mats indefinitely. Not once did Cannon accept MacNeil's numerous invitations to visit Chicago to discuss and review the situation. Id.

Moreover, aside from the high number of defective mats here in Chicago, MacNeil has voluminous other evidence, such as extensive documentation relating to both the MacNeil and Hyundai warranty claims, substantial correspondence with both Hyundai and BMW, numerous inspection reports, documentation regarding product rejects, quality checklists and protocols, purchase orders and correspondence between MacNeil and Cannon, and hundreds if not thousands of photographs documenting the defective Cannon mats for both Hyundai and BMW. Ex. 5 at ¶ 7. Additionally, it is assured that BMW and Hyundai have extensive documentation regarding the defective mats from Cannon and quality control issues related to these defects. These documents are also located here in the United States, and perhaps Korea.

The number of witnesses factor weighs in MacNeil's favor as well. MacNeil would likely call the following witnesses on its behalf: David F. MacNeil (CEO of MacNeil), Allan Thom (V.P. of MacNeil), Mike Bishop, Del Hollingsworth, Roger Conner, Jason Houcek, Dan Burton and Paul Mound. Ex. 5 at ¶ 5. All of these individuals have detailed knowledge of some, if not all, of the facts of this case and all are located here in Illinois or the United States. Thus, at the very least, the parties would be equally burdened by litigating in a foreign forum. Most important, however, is that the third-party witnesses from Hyundai and BMW,[3] whom are all located in the United States, would be seriously inconvenienced if forced to testify in

---

[3] At this time, MacNeil anticipates it would call as witnesses George Kurth from Hyundai and Dan Cordes and Michael Barret from BMW. Ex. 5 at ¶ 6.

England.  Cannon attempts to downplay this fact by referring to them simply as "end-user" witnesses.  However, these witnesses are anything but.  To the contrary, these witnesses are *central* to MacNeil's claims, such as for lost profits and harm to business reputation.  Moreover, these so-called "end-user" witnesses are the very people that also identified the systematic defects in Cannon's mats and brought the same to MacNeil's attention.  Ex. 5 at ¶ 6.  These witnesses are vital to key issues in this case.  Thus, the location of the witnesses, party and third-party, weighs heavily in MacNeil's favor.

Finally, MacNeil must address Cannon's "assertions" that it never imagined it would be subject to litigation in the United States.  In no less than three places, Cannon makes the following statements:

> Cannon understood from the beginning of the relationship that any disputes between the parties requiring court intervention would be resolved in the UK, under UK law… ***MacNeil never stated or suggested anything to the contrary***.
>
> \*     \*     \*
>
> ***Nor did MacNeil indicate at the October 9 meeting*** or at any other time before this litigation is (sic) purported position that the parties should resolve their disputes in the U.S. court system.
>
> \*     \*     \*
>
> [Mr. Peacock's] minutes reflect ***no mention or suggestion that the parties litigate in the U.S.*** even though Mr. Peackock informed MacNeil at the October 9 meeting (as reflected in the minutes) that Cannon would pursue full payment.

Mot. at 4; 6 (emphasis added).  To call these statements disingenuous would be putting it mildly.

At the October 9th meeting, when Mr. Peacock brought up the fact that Cannon would pursue payment of its invoices, Mr. MacNeil responded, discussing the possibility that Cannon would sue MacNeil in the United States, that if Cannon comes after MacNeil in a U.S.

court I will have damages for my reputation, my lost profits, lost business and my legal fees. Id. at ¶ 10. MacNeil also went on to inform Mr. Peacock that his employees would gladly testify in a U.S. court, and get in front of a judge or jury and testify about what happened with the Cannon defective product. This makes sense, because as a lay person, MacNeil would not have known (and did not know) that Cannon could sue MacNeil in the United Kingdom as MacNeil has no presence in England. Clearly, based on this conversation, Cannon was aware that it might face or would be expected to bring litigation in the United States; as MacNeil had suggested.

Considering all of the above facts, the convenience factor clearly weighs heavily in MacNeil's favor and against Cannon's motion to dismiss or stay.

### C. There is no chance for piecemeal litigation.

As the action in England is effectively ended, there is no chance for piecemeal litigation. This factor weighs in MacNeil's favor and against Cannon's motion.

### D. The two actions were filed close together.

No less than five times does Cannon cite Basic Fitzroy Eng'g, Ltd., 949 F. Supp. 1333, 1340 (N.D. Ill. 1996) for the exact same quote. However, despite Cannon's repeated chant of the "first-filed" mantra, the fact that Cannon raced to the courthouse first lacks any persuasive value. MacNeil first received notice of Cannon's claim in England when it was served with the same on December 20, 2007, right before the Christmas holiday. Approximately two weeks later, on January 7, 2008, MacNeil filed its Complaint in this Court. The closeness in time of the parties respective filings does not render this factor "meaningful." See Eisenmann, 2004 U.S. Dist. LEXIS 1517, at *14-15 (the court found that although the Canadian action was first-filed, it was filed only one month before the federal action, "which does not render this [*Colorado River*] factor particularly meaningful.").

If anything, Cannon's race to the courthouse is an attempt to do what it now also seeks to do with this motion, which is deprive MacNeil of its right to litigate its claims in Illinois. Cannon's tactical maneuvering becomes clear when one considers that Cannon did not follow the proper pre-action protocols applicable to filing its claim in England. See Ex. 4, Declaration of Kent Phillips at ¶ 16. According to English procedure, before a party files a claim it is required to give the potential defendant clear notice that the plaintiff will file a legal action and inform the potential defendant of the possible consequences of such an action. Cannon did none of this. Therefore, at the very least this factor is likely neutral and, considering Cannon's litigation tactics, should weigh in MacNeil's favor if it is to be given any weight.

### E. **Illinois is the source of governing law.**

It is curious that Mr. Peacock considers himself competent to testify as to how the relationship between MacNeil and Cannon began, which started in 1989, considering that Mr. Peacock did not begin to work for Cannon until the mid-1990s. Regardless, he is incorrect. Mot. at 3. The terms of the contract were negotiated in Chicago and the initial contract formation between Cannon and MacNeil occurred in Chicago. The parties initial contract negotiations and formation occurred as follows:

1) David MacNeil saw Cannon's floor mats on a visit to Scotland;

2) When Mr. MacNeil returned to Chicago, he called Cannon and spoke with a Mr. Henry Carlton, a senior representative of Cannon, about becoming Cannon's U.S. distributor;

3) Mr. Carlton sent some samples of Cannon floor mats to Mr. MacNeil in Chicago;

4) Mr. MacNeil then visited Cannon in England to discuss the matter further, and met with Cannon's senior representatives;

5) Before Cannon could agree to use MacNeil as a distributor, Mr. Carlton flew to Chicago to review his business operation and references;

   6)  Mr. Carlton came to Chicago for approximately a week and it was at that time that the terms of MacNeil's first purchase of Cannon floor mats was negotiated and the contract between the two parties was formed.

<u>See</u> Ex. 6, Declaration of David MacNeil at ¶¶ 2-6. Cannon also fails to mention that on many occasions it shipped its floor mats directly to Chicago, where MacNeil first took possession of this product in Chicago. Almost every factor Cannon lists on page 4 of its motion has equal connections to Illinois as it does to the U.K. (e.g., MacNeil originated purchase orders in Illinois and sent them to Cannon in the U.K., Cannon responded and sent an acknowledgement to MacNeil in Illinois). Moreover, every time the parties met to discuss issues related to the defects MacNeil has filed its lawsuit on, Cannon representatives would visit MacNeil in Chicago. <u>See</u> Ex. 5 at ¶¶ 9-11. At no time did MacNeil representatives schedule a visit to Cannon in the U.K. related to these defects. If anything, the facts make it clear that this relationship, and the dispute at hand, is Illinois-centered, not U.K.-centered.

   Cannon is correct that no agreement specifies the parties' choice of law. However, although this issue may be for another day, Cannon is incorrect that English law would govern the parties dealings here. Under the "significant contacts" test employed by Illinois courts, it is clear that Illinois law governs the instant dispute. <u>See</u> <u>Wildey v. Springs</u>, 47 F.3d 1475, 1481-83 (7th Cir. 1995). This Court, not an English court, is better suited to hear a dispute governed by Illinois law. This factor weighs heavily in MacNeil's favor and against Cannon's motion to dismiss or stay.

   **F.**  **MacNeil would lose substantial rights and remedies if forced to litigate in England.**

   As laid out in MacNeil's motion to enjoin, MacNeil likely would lose substantial remedies and rights if forced to litigate in England. Cannon disputes this, but it essentially

comes down to the dueling affidavits of the parties' solicitors.  See Ex. 7.  What is clear and undeniable, however, is that MacNeil would lose its fundamental right to a jury trial in England.  Thus, this factor weighs in MacNeil's favor.

> ### G. The proceedings in England are effectively over and there is no danger of inefficiency or inconsistent results from a concurrent jurisdiction.

The litigation in England is effectively over and there is no danger of inefficency or inconsistent results.  These factors weigh in MacNeil's favor.

> ### I. MacNeil's claims are neither vexatious nor contrived.

Given MacNeil's recent actions, it is clear that MacNeil is confident in its claims and they are anything but vexatious or contrived.  The fact that MacNeil did not run to the courthouse immediately on its claims is simply a reflection of an 18 year relationship with Cannon, and a desire to work the parties' disputes out amicably if possible, and has no bearing on the validity or strength of MacNeil's claims.  Cannon's point on this issue has no merit.

*    *    *

Of the *Colorado River* factors that are still arguably applicable, all are neutral or weigh in MacNeil's favor.  Given that the scale is already tipped in MacNeil's favor due to the presumption employed by the Seventh Circuit, it is clear that the Court should exercise its jurisdiction here.

## CONCLUSION

WHEREFORE, for the foregoing reasons, MacNeil respectfully requests that the Court deny Cannon's motion to dismiss or stay in its entirety.

        Respectfully submitted,

**MACNEIL AUTOMOTIVE PRODUCTS LIMITED**

Dated: March 12, 2008      By:    /s/ Robert S. Grabemann
                                               One of Its Attorneys

Robert S. Grabemann
Timothy M. Schaum
DASPIN & AUMENT, LLP
227 West Monroe Street
Suite 3500
Chicago, Illinois 60606
(312) 258-1600

**CERTIFICATE OF SERVICE**

   The undersigned, an attorney, hereby certifies that he caused a copy of the foregoing MACNEIL'S RESPONSE TO CANNON'S MOTION TO DISMISS OR STAY PROCEEDINGS via electronic filing, on or about the 12th day of March, 2008 on:

William N. Howard
John T. Shapiro
Terrence J. Sheahan
Suzanne M. Rose
Freeborn & Peters LLP
311 South Wacker Drive
Suite 3000
Chicago, Illinois 60606
(312) 360-6000
(312) 360-6520



              /s/   Robert S. Grabemann
                Robert S. Grabemann