IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MACNEIL AUTOMOTIVE PRODUCTS LIMITED, an Illinois Corporation, | ) ) ) | |
| Plaintiff, | ) ) | No. 08 C 139 |
| v. | ) ) ) | Honorable Joan B. Gottschall |
| CANNON AUTOMOTIVE LIMITED, f/k/a CANNON RUBBER LIMITED, AUTOMOTIVE DIVISION, a United Kingdom Company, | ) ) ) ) ) | Magistrate Judge Arlander Keys |
| Defendant. | ) | |

**CANNON'S REPLY IN SUPPORT OF ITS MOTION
TO DISMISS PURSUANT TO *FORUM NON CONVENIENS***

**INTRODUCTION**

This dispute involves the parties' UK-centered supply agreement that was solicited, negotiated and fully performed in the UK. MacNeil has not rebutted this fundamental circumstance. The products about which MacNeil complains were manufactured, packaged and delivered in the UK. Moreover, critical witnesses, documents and evidence are located in the UK, and UK law governs the parties' dispute. Faced with this reality, MacNeil distorts the circumstances and offers conclusory allegations in opposition ("Response") to Cannon's Motion to Dismiss based on *forum non conveniens*. But distortion and conclusions do not cut it. The Court thus should decline jurisdiction in favor of the UK forum because of the administrative entanglements and substantial inconvenience that would result from litigation in the U.S.

1

## ARGUMENT

I.    **MacNeil Urges The Court To Employ The Wrong Legal Standard.**

In its effort to justify keeping its action in the U.S., MacNeil urges this Court to judge Cannon's motion using an "unjust, vexatious and oppressive" standard. (Response at 6, 8, 9, 11, 15.) MacNeil misstates the state of the law. To be sure, courts have dismissed cases based on *forum non conveniens* where the litigation has been unjust, vexatious or oppressive. But courts in this Circuit eschew rote application of such a rigid, heightened standard in favor of measured determinations that best serve "the convenience of the parties and the ends of justice." *See In re Air Crash Near Athens, Greece*, 479 F. Supp.2d 792, 796-97 (N.D. Ill. Feb 28, 2007); *see also Chelios v. NHL Players' Assoc.*, 2007 WL 178326 at *3 (N.D. Ill. Jan. 8, 2007) (same); *Vlasic v. Wyndham Int'l, Inc.*, 451 F. Supp.2d 1005, 1007 (C.D. Ill. Sept. 19, 2006) (same); *Juanes v. Continental Tire North America, Inc.*, 2005 WL 2347218 at *1 (S.D. Ill. Sept. 26, 2005) (same); *Hidrovia S.A. v. Great Lakes Dredge & Dock Corp.*, 2003 WL 2004411 at *1 (N.D. Ill. April 28, 2003) (same). In fact, the United States Supreme Court recently stated that "[d]ismissal for *forum non conveniens* reflects a court's assessment of a 'range of considerations, most notably the convenience to the parties and the practical difficulties that can attend the adjudication of a dispute in a certain locality.'" *Sinochem Intl. Co. Ltd., v. Malaysia Intl. Shipping Corp.*, 127 S.Ct. 1184, 1190 (2007). Thus, the Court has substantial flexibility in evaluating Cannon's *forum non conveniens* motion, and the "case turns on its facts." *Van Canwenberghe v. Baird*, 486 U.S. 517, 528 (1988). "Dismissal is proper if 'balance of conveniences suggests that trial in the chosen forum would be unnecessarily burdensome for the defendant or the court." *U.S.O. Corp., v. Mizuho Holding Co.*, 2007 WL 2893628 at *2 (N.D. Ill. Sept 7, 2007) (citation and

internal quotation marks omitted). Based upon the UK-centered nature of the parties' relationship, and the convenience of the parties, justice warrants dismissal.

## II. MacNeil's Choice Of Forum Is Accorded Little Deference Because It Has Conducted Extensive Foreign Business.

In the same vein, MacNeil contends that its choice of forum should be accorded "significant deference." Again, MacNeil distorts the applicable standard and considerations.[1] The Supreme Court has cautioned that "[a] citizen's forum choice should not be given dispositive weight" and "dismissal should not be automatically barred when a plaintiff has filed suit in his home forum." *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255-56 n.23 (1981). "Judicial concern for allowing citizens of the United States access to American courts has been tempered by the expansion and realities of international commerce." *Dtex, LLC v. BBVA Bancomer*, 508 F.3d 785, 795 (5th Cir. 2007). And, where a plaintiff has engaged in extensive foreign business, the Court can discount the "plaintiff's United States citizenship" in the *forum non conveniens* analysis. *Kamel v. Hill-Rom Co., Inc.*, 108 F.3d 799, 804 (7th Cir. 1997).

MacNeil attempts to deflect focus away from its own extensive foreign business in the UK and elsewhere by pointing to the purported foreign operations of Cannon's *former parent corporation*. (Response at 9.) MacNeil's effort fails for at least three reasons.

First, CannonAvent Group to which MacNeil refers no longer exists. And, Cannon has no presence in the U.S. Cannon distributed its mats in the U.S. only through MacNeil, who purchased and took delivery of the mats in the UK. (Op. Memorandum, Peacock Decl. I ¶ 14.)

---

[1] Cannon does not take inconsistent positions in its motion, as MacNeil claims. For example, Cannon is accurate in its opening Memorandum when it notes that it was compelled to withdraw its *Colorado River* motion when MacNeil agreed to accept a judgment against it in the UK action, but the dispute at the heart of the UK action nevertheless lives on. MacNeil's conduct in the UK action was purely tactical, designed to undermine the *Colorado River* motion. The dispute lives on because MacNeil now has indicated that it will contest enforcement of the UK judgment. Moreover, MacNeil's conduct is the UK action is not

The same was true when Cannon fell under the auspices of the CannonAvent Group as the Cannon/MacNeil relationship started in 1989. (*Id.* ¶ 12, 15.)

Second, the issue of whether several years ago Cannon's former parent company distributed unrelated product in the Chicago area is irrelevant. As indicated, the Court's "central purpose of any *forum non conveniens* inquiry is to ensure that the trial is convenient," *Piper*, 454 U.S. at 256, and past business operations of a former parent company selling a different product has no bearing whatsoever on where it would be convenient for the parties to litigate the present disputes.[2]

Third, the extent of Cannon's foreign business (or of its former parent company for that matter) is not relevant to the issue of whether this Court should grant deference to MacNeil's choice of forum. Courts focus on whether the American company – not the foreign company – has been a willing participant in the ever-expanding international economy:

> In an era of increasing international commerce, parties who choose to engage in international transactions should know that when their foreign operations lead to litigation, they cannot expect always to bring their foreign opponents into a United States forum when every reasonable consideration leads to the conclusion that the site of the litigation should be elsewhere.

*Dtex*, 508 F.3d at 795 (citations omitted).

There is no dispute that MacNeil conducts extensive foreign business – the facts as outlined in Cannon's opening Memorandum clearly demonstrate that it did. With respect to this dispute, MacNeil willingly solicited, and continued to engage in, extensive international

---

irrelevant, as MacNeil would have the Court believe. The Court may consider MacNeil's tactics in determining whether to dismiss its U.S. action. (*See* op. Memorandum at 14.)

[2] The Court should strike Exhibit D to the Response because it lacks any authentication. Regardless, the document is of no import because it does not address the supply agreement or the alleged defective products that are the subject of this dispute. At best, the exhibit only establishes the existence of an affiliated relationship. *See, e.g, Kilvert v. Tambrands, Inc.*, 906 F. Supp. 790, 795 (S.D.N.Y. 1995) ("plaintiffs have presented no evidence that the parent/subsidiary relationship between the [the defendant and its English subsidiary] is anything but independent and separate").

4

transactions with Cannon in the UK over the course of what MacNeil has acknowledged to be an international "18 year business relationship." (Response at 2.) Moreover, it is unrebutted that MacNeil purchased and received in the UK millions of dollars worth of product from Cannon since 1989. (*See* op. Memorandum, Peacock Decl. I ¶ 15, 24 and 43.) Indeed, this dispute does not center around a handful of isolated international transactions; it arises from a sustained international business relationship that began long ago. Thus, MacNeil ignores reality when it suggests that it has not engaged in extensive foreign business.[3]

In addition, MacNeil misstates the relevant consideration. MacNeil contends, without any evidence, that it "distributes 98% of its product to one market, North America (mostly the U.S.)" As an initial matter, according to one of the cases cited by MacNeil, this statement should be stricken because it is not supported by any evidence or affidavit. *See, e.g., Kittinger v. Temple Bay Lodge*, No. 04-C-5516 2006 U.S. Dist. Lexis 3077, at *4-5 (N.D. Ill. Jan. 25, 2006) (noting the court is only to take into consideration "the pleadings, affidavits and other documentary evidence."). But, even if the Court were to consider this contention, it would make no difference. The real issue at hand is from where MacNeil secured the mats it distributes – from Cannon in the UK.

As noted in Cannon's opening Memorandum, *Hull 753 Corp. v. Elbe Flugzeugwerke, et al.*, 58 F. Supp.2d 925 (N.D. Ill. 1999) is instructive on this point. In *Hull*, the district court

---

[3] It is surprising that MacNeil even attempts refute that it engages in international transactions. A review of MacNeil's website (http://www.weathertech.com) establishes that MacNeil sells product in nineteen (19) countries – including the UK – other than the United States. According to the International page on MacNeil's website, accessed by clicking on MacNeil's "International" icon, MacNeil distributes its products in each of the following countries: Canada, Colombia, Costa Rica, Dominican Republic, El Salvador, Guatemala, Honduras, Iceland, Jamaica, Japan, Mexico, New Zealand, Panama, Peru, Taiwan, Turkey, Ukraine, United Kingdom and Venezuela. *See* http://www.weathertech.com/international. (*See* Declaration of Lisa Syprzak at ¶ 2-5, a copy of which is attached hereto as Exhibit 1.) "[T]he contents of [a plaintiff's] website may be considered an admission of a party-opponent, and are not barred by the

dismissed the action under the doctrine of *forum non conveniens* in favor of the German forum despite the fact that the plaintiff was an Illinois corporation that filed in its home forum. *Id.* at 930. The court, "decline[d] to give much weight to Hull's choice of forum" because Hull willingly engaged in the international economy. *Id.* Here, it is clear that MacNeil has engaged in, and profited substantially from, an 18 year international relationship with Cannon. Moreover, its own website demonstrates that it continues to do international business in nineteen countries other than the United States. Similar to *Hull,* this Court should decline to give much weight to MacNeil's choice of forum because of its willing and extensive participation in the international economy.

### III.     The UK Is Available To MacNeil – As A Plaintiff – And Is An Adequate Forum.

#### A.     MacNeil Misunderstands The Law With Respect To Available Forum.

MacNeil completely missed the point when it contends that the motion should be denied because MacNeil "never conceded that the English Court had jurisdiction over it" and that it "continues to assert that it is not subject to the jurisdiction of the English Court." (Response at 10.) As this Court explained in *Philiotis v. Executive Mfg. Tech., Inc.*, No. 04-C-3239, 2004 U.S. Dist. LEXIS 21723 (N.D. Ill. Oct. 25, 2004)(Gottscahll, J.), an opinion to which MacNeil cites no less than ten times in its Response (*see* Response at 2, 6, 8, 9, 11 and 13), the issue is whether the alternative forum has jurisdiction over the defendant, not the plaintiff.  In *Philiotis*, as here, the plaintiff maintained that the alternative forum was not "available" for purposes of a *forum non conveniens* analysis because he was "not amenable to process there." 2004 U.S. Dist. LEXIS 21723, at *6. This Court explained:

---

hearsay rule." *Telewizja Polska USA, Inc., v. Echostar Satellite Corp.,* 2004 WL 2367740 at * 5 (N.D.Ill Oct. 15, 2004).

6

> Plaintiffs do not require a determination that they are "amenable to process" as they are voluntarily seeking relief and therefore do not need a mechanism requiring them to appear or respond in court.

*Id.* Thus, the availability factor is satisfied here because MacNeil can voluntarily avail itself of the UK court system and Cannon has represented that it is amenable to process in the UK.

### B. MacNeil Concedes That The UK Is An Adequate Forum.

MacNeil concedes that the UK is an adequate forum. In fact, MacNeil states that it "is aware of the case law in this court stating that England is usually an adequate forum, and that it is likely that this Court would also find it an adequate forum according to said precedent." (Response at 10.) Consequently, there should be no dispute that the UK court system is both Cannon has established that the UK is both an available and adequate forum in which to resolve the parties' disputes.[4]

### IV. MacNeil Has Not Shown That Private Factors Favor this Forum.

#### A. Ease Of Access To Sources Of Proof.

The parties will face substantial and unnecessary burdens in obtaining relevant evidence in this case if it is litigated in the U.S. rather than the UK. The majority of physical evidence and other sources of proof that pertain to this dispute are located in the UK. In a clear effort to minimize its fatal admission that it destroyed nearly all of the alleged "defective product," MacNeil contends that it still possesses 1000 pounds of mats and that there are "0 pounds of mats in England." (Response at 7.) Aside from issues concerning MacNeil's destruction of

---

[4] Cannon does not offer contradictory statements in its opening Memorandum as to the available and adequate nature of the UK form, as MacNeil contends. (Response at 6.) In suggesting otherwise, MacNeil misses the point of this *forum non conveniens* analysis. Cannon noted that an English court would have no trouble applying Illinois law, if it somehow determined that Illinois, rather than UK, law applied, to support the fact that England is an adequate and available forum. (*See* op. Memorandum at 8.) In contrast, with respect to the inconvenience of litigating in the U.S., Cannon noted that this Court would suffer inconvenience as well as a burden should it have to delve into the intricacies necessary to apply English to

evidence, MacNeil's revelation undermines its opposition to dismissal because other than documents, which easily can be transmitted to the UK, these 70 mat sets are the only physical evidence located in the U.S.[5] MacNeil can transport this small number of mats to the UK for trial or other proceedings, if necessary. By comparison, none of the tangible evidence that Cannon may need to defend against MacNeil's claims, including Cannon's equipment, tooling and processing lines, can be transport to the U.S. for review. Thus, this factor clearly favors dismissal of this case.

### B.     Availability Of Witnesses.

MacNeil listed a total of seven individuals under its control and three non-party witnesses that it will call at trial. MacNeil argues that because the witnesses under its control reside in this forum and because the non-party witness reside in the U.S., it would be more convenient to conduct the trial here. (Response at 5.) This argument fails for two reasons.

First, Cannon has identified far more witness who will be called at trial who reside in the UK. As explained in Cannon's opening Memorandum, Cannon witnesses who are likely to give testimony include Robert Peacock, Richard Bigood, Michael Wren, John Mall and Edward Atkin. (Op. Memorandum, Peacock Decl. I ¶ 21-22.) In addition, depending on the scope of MacNeil's claims and issues in the litigation, Cannon anticipates that it will have to call to testify in its defense *several* additional witnesses, including various Cannon designers, engineers and toolmakers, Cannon employees involved in the packaging and inspection of the product, and other middle and senior managers responsible for the MacNeil account. (*Id.*; Peacock Decl. II ¶

---

resolve the parties' disputes. (*Id.* at 11.) Cannon's contentions are neither inconsistent nor uttered in the same breath, as MacNeil accuses.

[5] MacNeil does not contest that 1000 pounds of mats is the equivalent of about only 70 mat sets, approximately .07% of the total number of Hyundai mats Cannon sold to MacNeil and approximately .38% of the total number of Hyundai mats MacNeil now claims were defective. (Op. Memorandum, Peacock Decl. II ¶ 7.)

3.) The potential costs associated with transporting all of these witnesses to the U.S. alone are prohibitive. *See, e.g., Europe & Overseas, Commodity Traders, v. Banque Pribas London*, 940 F. Supp. 528, 538 (S.D.N.Y. 1996) (cost for transporting witnesses from England was prohibitive). In any event, all of these individuals are essential witnesses to this dispute and none of them reside in the U.S. *See Law Bulletin Publ'g Co. v. LRP Publications Inc.*, 992 F. Supp. 1014, 1018 (N.D. Ill. 1998) ("[T]he Court must look to the nature and quality of the witnesses' testimony with respect to the issues of the case.").

Second, the problems associated with serving process on MacNeil's non-party witnesses will occur in either forum. MacNeil's Response establishes that the three potential non-party witnesses that it has identified live in California, New Jersey and Connecticut (*see* Response, Exh. A5 (Thom Decl. ¶ 6)) and, therefore, are not subject to this Court's compulsory process under Fed.R.Civ.P. 45(b)(2) and (c)(3).

### C. Viewing The Premises.

MacNeil does not contest that the only premises that would be viewed in this litigation are Cannon's manufacturing facilities in London, England. Instead, MacNeil attempts to sweep away this undisputed circumstance that weighs substantially in favor of dismissal by citing to *Santora v. Starwood Hotel and Resorts Wordlwide, Inc.*, No. 05-C-6391, 2006 U.S. Dist. LEXIS 34080 (N.D. Ill. May 15, 2006), for the notion that that the Court "can view pictures and video through the powers of modern technology." (Response at 14.) But the circumstances underlying *Santora* render that case inapposite. *Santora* involved allegations of a slip and fall in a hotel hallway. In light of the simple nature of the premises at issue, the court found that pictures and videos of the hallway would suffice. Here, in contrast, details regarding inspection of Cannon's

machinery, tooling and manufacturing processes would be difficult, if not impossible, to adequately capture in a picture or video.

### D. Other Practical Problems Weigh In Favor Of A UK Forum.

It would pose a substantial inconvenience, and likely an interruption and loss, to Cannon's business operations if the Cannon personnel involved in this dispute are required to travel to the U.S. at the same time to participate in a trial of this matter. (Op. Memorandum, Peacock Decl. I ¶ 23.)  Notably, MacNeil has not made a similar showing of cost, burden, or inconvenience if the trial is conducted in the UK.[6]  Indeed, it would be particularly unfair and oppressive to require Cannon to incur this harm to its business operations when the crux of the dispute centers around (i) a contract that was solicited, negotiated and fully performed in the UK; and (ii) products that were designed, produced and delivered in the UK.  *See, e.g., Intec U.S.A. LLC v. Engle, IBEX,* 2005 WL 3455863 at *3-4 (N.D. Ill. Dec. 13, 2005), *vacated on other grounds*, 467 F.3d 1038 (7th Cir. 2006) (finding that the private interest factors weigh in favor of foreign forum where the crux of the case involved conduct occurring in New Zealand).

As explained in Cannon's opening Memorandum, given the UK-centered nature of the parties' supply relationship, English law governs the parties' disputes.[7]  And, the case law is

---

[6] MacNeil's claim that litigation in the UK would be particularly costly to the parties fair no better. As an initial matter, MacNeil's contention hinges on the "prevailing exchange rate," but MacNeil offers no competent evidence of that rate and its argument should be stricken. Regardless, exchange rates are subject to fluctuation are not a particularly reliable source on which to argue that litigation in a particular forum would be inconvenient. More important as to the consideration of cost, MacNeil should embrace the fee shifting available in the UK if it truly puts stock in its claim. Contrary to MacNeil's contention, this circumstance deserves a response and consideration. (Response at 15.) MacNeil offers none, telling of its faith in the strength of its claims.

[7] As noted in the opening Memorandum, in light of the UK-centered nature of the supply relationship, including MacNeil's solicitation of Cannon in the UK and Cannon's delivery of product to MacNeil in the UK, it is clear that the UK has the most significant contacts. *See* Restatement (Second) of Conflicts § 188(3) (1971) (if the place of contract negotiation and performance are the same, that state's law usually will apply). MacNeil tries to minimize somewhat these substantial UK-centered contacts by contending that on some occasions Cannon shipped mats to MacNeil in the U.S. and that a portion of MacNeil's

clear on this point, despite MacNeil's efforts to minimize this issue. Where a court must apply the law of an available and adequate forum, dismissal in favor of that forum is warranted. *See, e.g., Ludgate Ins. Co. Ltd., v. Becker*, 906 F. Supp. 1233, 1238 n.6 (N.D. Ill. 1995) ("Since English law is likely to be applied here … it is proper to consider the additional expense and inconvenience of requiring the testimony of expert witnesses on English law. The use of experts is costly to the parties in terms of both time and money, a consideration which weighs in favor of dismissal here."). Thus, Courts in this district have held that dismissal is appropriate where foreign law must be applied because "this Court has an interest in not having to delve into the tenants of an unfamiliar legal system." *Apotex Corp. v. Instituto Biologico Chemioterapico*, 2003 WL 21780965 at *9 (N.D. Ill., July 30, 2003) (citing *Kamel*, 108 F.3d at 805); *Hull 753 Corp. v. Elbe Flugzeugwerke, et al.*, 58 F. Supp.2d 925, 928 (N.D. Ill. 1999). Consequently, the other practical problems associated with litigating this case in this forum weigh in favor of dismissal.

V. **MacNeil Has Not Shown That Public Factors Favor This Forum.**

    A. **Local Interests**.

MacNeil argues that this Court has greater interest in this dispute than the UK Courts. Not so. Again, this dispute involves a UK-centered supply agreement that was fully performed in the UK by a UK company incorporated under English law. Thus, if any wrongful conduct occurred with respect to the products at issue, it occurred where the products were manufactured

---

negotiation of the supply relationship occurred when he was in the U.S. MacNeil's vague references should be disregarded as unsupported by competent evidence. Indeed, MacNeil contradicts those vague references when he acknowledges that he solicited Cannon in the UK to enter into a supply relationship. (Response, Ex. A, Ex. 6 ¶ 1-2.) Regardless, MacNeil's vague references do not undermine the clarity and weight of the evidence Cannon offers – that the supply relationship was negotiated in the UK, that the parties performed the relationship in the UK and that the relationship was completed within the UK when Cannon delivered the mats to MacNeil (or its shipping agent ) in the UK for shipment to the U.S. (Op.

and delivered. In that vein, U.S. courts recognize the paramount interest each nation has in policing the alleged wrongful conduct of its own corporations – here the UK, if MacNeil's allegations about Cannon's mats are to be believed in the first place. *ISI International, Inc. v. Borden Ladner Gervais LLP*, 2001 WL 1382572 at *4 (N.D. Ill. Nov. 5, 2001). Similarly, U.S. courts recognize that other nations have a significant interest, weighing in favor of dismissal on the basis of convenience, in ensuring that their laws are accurately applied. *See, e.g., Hull*, 58 F. Supp.2d at 925 (holding "Germany's interest in applying it's own law (correctly) is significant"); *see also Intec*, 2005 WL 3455863 at *6 (holding that "to ensure a correct application of New Zealand law, this Court should not delve into the tenets of an unfamiliar legal system"). Here, the UK's interest in resolution of this lawsuit significantly outweighs the U.S. interest because (i) the events giving rise to MacNeil's allegations occurred in the U.K; (ii) this dispute involves the alleged wrongful activities of a UK corporation; and (iii) resolution of this dispute requires the application of UK law.

### B. Court Congestion.

MacNeil contends that consideration for the congested nature of the Court's docket should "be given no weight." (Response at 11.) This argument lacks merit for two reasons. First, MacNeil ignores, and leaves unrebutted, the fact that the District Court for the Northern District of Illinois is not only a highly congested forum, but it is becoming increasingly congested. Second, other courts in this district have recently considered the exact information provided by Cannon on this issue and have found that such information favors dismissal of the case. Previous federal court decisions have found that the Northern District of Illinois is a highly congested forum. *See, e.g., In re Factor VIII or IX Concentrate Blood Prods. Liab. Litig.*, 408

---

Memorandum, Peacock Decl. I ¶ 11, 14.) In other words, MacNeil has not rebutted those circumstances that weigh substantial in favor of dismissal.

F.Supp.2d 569, 588 (N.D. Ill. 2006); *Macedo v. Boeing Co.*, 693 F.2d 683, 690 (7th Cir. 1982). Those decisions are buttressed by statistics that show that in the 12 month period ending in September, 2007, the Northern District of Illinois had the seventh highest number of civil cases filed out of the ninety-four federal district courts. (Op. Memorandum, Ex. 5.)

Nevertheless, MacNeil contends that the Court should not consider this factor because Cannon has offered no similar evidence as to the crowded nature of the UK-court docket. This Court previously rejected a similar argument. In *In re Factor VIII*, the plaintiffs also argued that "defendants have failed to prove there is less congestion in the UK courts." 408 F. Supp. 2d at 588. In finding that this factor weighed in favor of dismissal, the District Court assumed that the UK-court docket was similar to that in the Northern District of Illinois and found that "the fact that there would not be a jury trial in the UK would make a significant difference in the length of the trial and therefore in the impact it would have on the court's calendar." Additionally, the court found it self-evident that "a bench trial can be conducted in substantially less time than the same trial before a jury." *Id.* at 589. Similarly, the Court should find so here.

C.  **The Burden Of Jury Duty.**

In the end, there is no need to burden U.S. citizens with jury duty to resolve claims that ripened, and should be litigated, in the UK under English law.

## CONCLUSION

It is clear that the UK is the appropriate forum for resolution of the parties' disputes. MacNeil's complaint allegations arise out of a UK-centered supply relationship. MacNeil's opposition did nothing to dispel that reality. It thus is not surprising that convenience factors weigh in favor of the UK forum. The UK affords MacNeil with an adequate and available forum

in which to pursue its claims against Cannon. The Court this should grant Cannon's motion to dismiss on the grounds of *forum non conveniens*.

                                      Respectfully submitted,

                                      CANNON AUTOMOTIVE LIMITED

                                      By:   /s/ John T. Shapiro
                                                   One of Its Attorneys

William N. Howard
John T. Shapiro
Terrence J. Sheahan
Freeborn & Peters LLP
311 South Wacker Drive, Suite 3000
Chicago, Illinois 60606
(312) 360-6000

Dated:  May 1, 2008

## **CERTIFICATE OF SERVICE**

    The undersigned, one of the attorneys for Cannon Automotive Limited, hereby certifies that he caused a copy of Cannon's Reply In Support Of Its Motion To Dismiss Pursuant To *Forum Non Conveniens* to be served on:

> Robert S. Grabemann
> Timothy S. Schaum
> Daspin & Aument, LLP
> 227 West Monroe Street
> Suite 3500
> Chicago, Illinois  60606

on May 1, 2008, via the Court's electronic filing system.


                                                                                          /s/ John T. Shapiro

#1529995