UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MACNEIL AUTOMOTIVE PRODUCTS LTD, an Illinois Corporation,<br><br>           Plaintiff,<br><br>   v.<br><br>CANNON AUTOMOTIVE LTD., f/k/a/ CANNON RUBBER LTD., AUTOMOTIVE DIVISION, a United Kingdom Company,<br><br>           Defendant. | Case No. 08 C 139<br><br>Judge Joan B. Gottschall |

## MEMORANDUM OPINION & ORDER

Defendant Cannon Automotive Ltd., f/k/a/ Cannon Rubber Ltd., Automotive Division ("Cannon") moves this court to dismiss Plaintiff MacNeil Automotive Products Ltd.'s ("MacNeil's") complaint under the doctrine of *forum non conveniens*. For the reasons set forth below, Cannon's motion is denied.

### BACKGROUND[1]

Cannon and MacNeil have been contesting the proper forum for this lawsuit from the inception of both this and related litigation brought in the United Kingdom. Cannon is incorporated and situated in the United Kingdom. MacNeil is incorporated and situated within the Northern District. Suit was first filed by Cannon against MacNeil in the United Kingdom on November 30, 2007 under a theory of breach of contract for failure to pay monies due. MacNeil filed its own suit

---

[1] The court takes the facts included in this section from the parties' pleadings, including attached affidavits. *See*, *e.g.*, *Kontos v. U.S. Dep't of Labor*, 826 F.2d 573, 576 (7th Cir. 1987) (permitting courts to consider and weigh affidavits submitted by the parties in assessing jurisdiction). Allegations in MacNeil's complaint are taken as true except when controverted by Cannon's affidavits; any conflicts in affidavits are resolved in MacNeil's favor. *See Turnock v. Cope*, 816 F.2d 332, 333 (7th Cir. 1987).

in this court on January 7, 2008, presenting claims under the theories of breach of contract for failure to satisfactorily perform, promissary estoppel, the Illinois Consumer Fraud and Deceptive Business Practices Act, and implied warranties. Both parties promptly asked their preferred courts to enjoin the other court from proceeding. Cannon also asked this court to stay its own proceeding under a theory of *Colorado River* abstention. The parties' requests were ultimately withdrawn or became moot after MacNeil accepted a default judgment in the United Kingdom, ending that litigation. Nevertheless, the forum dispute remains front and center as a result of Cannon's current motion to dismiss MacNeil's action under the doctrine of *forum non conveniens*.

This is a contract case involving floor mats produced by Cannon and purchased by MacNeil to be resold to car manufacturers primarily in North America. The parties or predecessor corporations had engaged in business with each other for over fifteen years. However, the relationship soured as MacNeil began filling new contracts in 2001 and 2004. MacNeil alleges that it began raising concerns about the quality of floor mats being produced by Cannon for certain new car manufacturing clients, and started receiving complaints and losing down-stream business from the same. Cannon disputes that the floor mats were deficient or that it was responsible for any of MacNeil's losses.

The parties' business relationship commenced in 1989 on an oral understanding after repeated communications through the mail and phone, a visit by a MacNeil representative to the United Kingdom, and then a visit by a Cannon representative to Illinois. The first sale between Cannon and MacNeil, for a twenty foot container of mats, was negotiated in Chicago. The parties never entered any master written contract, never specified a choice of law, and never designated a forum or mechanism to resolve any potential disputes.

MacNeil describes itself as having been Cannon's "exclusive United States distributor," which Cannon does not dispute. Nevertheless, the parties never entered into a written exclusivity or non-complete agreement, neither party received any explicit consideration for this agreement, and they did not agree to any particular volume of sales.

Given the lack of any master agreement, specific sales occurred order by order. The ordering process was initiated by a request from MacNeil to Cannon specifying the type(s) and quantity(s) of mats desired. MacNeil's orders would not include prices. Cannon would then "cube up" the request, meaning that Cannon would determine how the requested product would fit into shipping containers, and send to MacNeil a "proforma invoice" stating the precise quantities and cost for the same, the method of delivery and payment, and the date of performance.[2] Cannon asserts that at this stage, the sale was complete. MacNeil counters that it was their general practice for MacNeil to respond to the proforma invoice, either orally or in writing, by assenting to its terms or asking that the terms be changed. Cannon would deliver the product to an agent of MacNeil within England, and the product would then be transported by MacNeil to the United States.[3]

Throughout their relationship, MacNeil continued distributing Cannon's product in the United States in the same manner described above. However, the dynamic changed somewhat in approximately 2001 and again in 2004 when Cannon negotiated specific agreements to provide specialized mats first to BMW, and then to Hyundai. Previously, MacNeil did not appear to have

---

[2] The date of performance appears to have only been included in invoices toward the end of the parties' relationship; the precise date when Cannon started including the date of performance is unknown.

[3] As problems between the companies began to emerge, Cannon did start periodically delivering *replacement* products directly to Chicago. This does not appear to have been a change in practice between the parties so much as an effort by a supplier to mollify an upset customer in response to specific incidents of alleged non-performance.

3

entered into any long-term contracts as a seller of Cannon products, and sold Cannon's mats on more of an *ad hoc* basis; in 2001, and again in 2004, both parties were aware that MacNeil now had specific performance demands that it would have to satisfy. Production of floor mats for these two car manufacturers required new and customized machinery and molds, referred to as "tooling." MacNeil designed the tooling for the BMW mats, and sent it to Cannon. For the Hyundai line, MacNeil sent Cannon specifications and Cannon designed the tooling itself.

It is not clear how or where the parties came to terms over the production of the BMW mats, but MacNeil went to England to discuss the Hyundai product line. Again, no written contract was ever signed. Throughout this time, Cannon also periodically visited Chicago to discuss the products and to review products that were allegedly deficient.

By 2006, MacNeil began seeking alternative suppliers. However, the relationship between MacNeil and Cannon continued until a meeting in 2007 where the parties attempted to work out their differences. Finding they could not do so, litigation ensued. Presently before the court is Cannon's motion to dismiss under a theory of *forum non conveniens.*

## ANALYSIS

The doctrine of *forum non conveniens* permits dismissal of a case over which the district court has jurisdiction but "where trial in the plaintiff's chosen forum imposes a heavy burden on the defendant or the court, and where the plaintiff is unable to offer any specific reasons of convenience supporting this choice." *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 249 (1981). The doctrine is a flexible and pragmatic one, designed to avoid trials in places so "oppressive and vexatious to the defendant" that transfer is needed to avoid serious unfairness. *In re Ford Motor Co.*, 344 F.3d 648, 651–52 (7th Cir. 2003); *see also Piper*, 454 U.S. at 259. This determination is committed to the sound discretion of the district court, which should balance relevant public and private interests in

4

reaching its decision. *In re Ford Motor Co.*, 344 F.3d at 651–52. Cannon carries the burden of persuading the court that this action should be dismissed on *forum non conveniens* grounds. *Id* at 652. The following factors are to be considered: 1) availability of an adequate alternative forum; 2) appropriate deference to the plaintiff's choice of forum; 3) "public interest" factors; and 4) "private interest" factors. *Kamel v. Hill-Rom Co.*, 108 F.3d 799, 802–05 (7th Cir. 1997); *Macedo v. Boeing Co.*, 693 F.2d 683, 686–90 (7th Cir. 1982).

**A.     The Availability of an Adequate Alternative Forum**

Cannon must first show that an adequate alternative forum with jurisdiction is available. *Kamel*, 108 F.3d 802–03. Cannon proposes the courts of the United Kingdom. An alternative forum is *available* so long as the defendant is amenable to service of process in the foreign jurisdiction, which is true here. *See Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 254 n.22 (1981). "An alternative forum is *adequate* when the parties will not be deprived of all remedies or treated unfairly." *Kamel*, 108 F.3d at 803 (emphasis added). The adequacy "standard does not require that the alternative forum provide the exact remedy sought from the domestic court." *Exter Shipping Ltd. v. Kilakos*, 310 F.Supp.2d 1301, 1320 (N.D. Ga. 2004). Here, MacNeil is pursuing primarily a contract claim, which is cognizable in the general jurisdictional courts of the United Kingdom. Although MacNeil may not be permitted to pursue the exact same claims of relief as would exist here, that is not the standard Cannon must satisfy. On this element, Cannon prevails.

**B.     MacNeil's Choice of Forum.**

MacNeil is master of its complaint, and MacNeil's choice of forum generally must be accorded significant deference. *See Wilson v. Humphreys (Cayman) Ltd.*, 916 F.2d 1239, 1246 (7th Cir. 1990). The plaintiff's decision "may be overcome only when the private and public interest factors clearly point towards trial in the alternative forum." *Piper*, 454 U.S. at 255. When a plaintiff

chooses his home forum, it is reasonable to assume that this choice is convenient. *See id.* at 241.
A plaintiff's choice of forum is afforded more weight in a *forum non conveniens* context than in the more lenient transfer of venue context under 28 U.S.C. § 1404(a), where it is merely one factor to be balanced amongst others. *See, e.g.*, *Club Assistance Pgm., Inc. v. Zukerman*, 598 F. Supp. 734, 736 (N.D. Ill. 1984) (noting that transfers under § 1404(a) are more freely granted than under *forum non conveniens*). MacNeil's choice of forum will not be disturbed unless the private and public interest factors clearly point toward trial in a British court.

**C.  Public Interest Factors.**

When determining whether the public interest favors dismissal for *forum non conveniens*, the court must examine the following: 1) administrative difficulties flowing from court congestion; 2) the local interest in having localized controversies decided at home; 3) avoidance of unnecessary problems in conflict of laws, or in the application of foreign law, and the preference for having a forum apply law with which it is familiar; and 4) the unfairness of burdening citizens in an unrelated forum with jury duty. *Piper*, 454 U.S. at 241 n.6.

Neither the first, second, nor fourth factor obviously weighs in favor of dismissal. Neither side points to comparative evidence regarding administrative issues or congestion of the courts. Both sides argue that their forum has a stronger local interest in resolving the issue, though an objective observer cannot meaningfully determine that one is the stronger than the other given that (I) the floor mats were *produced* in the United Kingdom (favoring that forum), but were ultimately distributed by an Illinois company (favoring this forum). Neither forum is so obviously unrelated as to be disinterested. Concern of jury duty in an unrelated forum is similarly not at issue.

The choice of law in this case is more opaque, precisely because both parties engaged in activities in both forums. "As a federal court sitting in diversity, we must look to the conflict-of-

6

laws rules in the jurisdiction in which we sit to choose the substantive law applicable to the case." *Wildey v. Springs*, 47 F.3d 1475, 1480 (7th Cir. 1995) (citations omitted). When a contract has connections with more than one forum, Illinois courts follow section 188 of the Restatement (Second) of Conflict of Laws. *Employers Ins. of Wausau v. Ehlco Liquidating Trust*, 723 N.E.2d 687, 694–95 (Ill. App. Ct. 1999); *Certain Underwriters at Lloyd's London v. Bertrand Goldberg Ass'n*, 606 N.E.2d 541, 546 (1992) (*forum non conveniens* case). The overriding question is which forum has the closer relationship to the contract; this requires consideration of several factors including: (1) the place of negotiation of the contract; (2) the place of contracting; (3) the place of performance; (4) the location of the subject matter of the contract; (5) the domicile, residence, nationality, place of incorporation, and (6) place of business of the parties. Restatement (Second) § 188(2). These are not rigid determinations; each is "to be evaluated according to [its] relative importance with respect to the particular issue." *Id.* In cases involving alleged breaches of implied warranty, the location where the goods were delivered will generally be favored. *See In re General Motors Corp.*, 241 F.R.D. 305, 317–18 (S.D. Ill. 2007) (collecting cases).

The place of performance and of delivery is the United Kingdom. The floor mats were produced in the United Kingdom and delivered to MacNeil in the United Kingdom. MacNeil argues that this tells only half the story—it also had to perform, which it did by initiating payment within Illinois. This argument is unconvincing. The contractual dispute is not over lack of payment but over the quality of the product delivered. Cannon's situs of performance is of greater consequence. *See id.*; *see also Midwest Grain Prods. v. Productization, Inc.*, 228 F.3d 784, 787–88 (7th Cir. 2000) (focusing on situs of manufacture and delivery).

Though the place of negotiation and contracting are also significant, in this instance these two factors are also much less clear. Negotiations began via a series of phone calls and mailings

7

between the parties but were initiated by MacNeil. MacNeil went to visit the United Kingdom, and Cannon subsequently visited Illinois. The first agreement to ship floor mats from Cannon to MacNeil was finalized during Cannon's visit in Illinois. However, the parties never entered into a master written agreement. Both parties understood that MacNeil was to be the "exclusive" distributor of Cannon products in the United States, but there is no indication that a specific length of time for this exclusive relationship was established, that consideration for this exclusivity was given, or that a particular volume of trade was contemplated. Prior to the initiation of the Hyundai floor mat program, MacNeil visited the United Kingdom to work out specific details. In this back-and-forth and long-term relationship, it is impossible to state definitively that negotiations occurred primarily in either of the two forums.

Again, because of the lack of a master written agreement, the specific place of contracting is also more complicated. For the fifteen years that MacNeil and Cannon worked together, the following approach was typical of their transactions: MacNeil would request the quantity and type(s) of mats desired. Cannon would "cube up" the order—determining how the differing types and sizes of mats would fit into the packaging—and would then send MacNeil a "proforma invoice" specifying the specific quantities, price, and other terms of the contract. Cannon argues that at this moment the sale was complete. MacNeil disputes this, arguing instead that it still had to agree—in writing or verbally—to the proforma invoice before the sale became final.

Contracts for the sale of goods for the price of $500 or more must generally be in writing. 810 Ill. Comp. Stat. 5/2-201(1). However, there is a "writing in confirmation" exception for sales between merchants that can satisfy the contractual requirements so long as the writing is (1) sent within a reasonable time; (2) confirms a preexisting contract; (3) is sufficient against the sender; (4) is received; and (5) the recipient must have reason to know its contents. § 2-201(2); *see also*

*Thomson Printing Mach. Co. v. B.F. Goodrich*, 714 F.2d 744, 746–47 (7th Cir. 1983). In these circumstances, the recipient of the written confirmation has ten days to raise any objections to the particular order. § 2-201(2).

MacNeil and Cannon are both "merchants" of floor mats as understood under the Illinois Uniform Commercial Code, and the sale of floor mats from Cannon to MacNeil is a transaction "between merchants." *See* § 2-104. The invoices sent from Cannon to MacNeil satisfies the "writing in confirmation" requirements of Section 2-201(2). They were sent promptly, and encapsulated the specifics of the order previously placed by MacNeil. Certain terms—most importantly, the price—were not introduced until the confirmation was sent, but an offer without a price can still create a binding obligation between the parties so long as there is a reasonable method for determining the price, especially where as here the solicitor has an opportunity to object to the price sent in the confirmation, and where there has been a long relationship between the parties that will provide some basis for the method of price determination. *See* 810 Ill. Comp. Stat. 5/1-201 (noting in commentary that price is not required term); -205 (permitting consideration of course of dealing when interpreting intent); *see also H & H Press, Inc. v. Axelrod*, 638 N.E.2d 333, 338 (Ill. App. Ct. 1994). Although MacNeil retained the right to request to change the particular quantity being shipped, to modify the price, or to adjust any of the other terms, this ability to modify does not imply that, absent such requests for alteration, no contract exists. Illinois law states that the place of contracting is the jurisdiction in which the last act necessary to validate the contract is completed. *Ill. Tool Works v. Sierracin Corp.*, 479 N.E.2d 1046, 1051 (Ill. App. Ct. 1985). That appeared to generally be in the United Kingdom.

Considering these factors, especially the place of performance by Cannon, this dispute will be controlled by the law of the United Kingdom.[4] However, though it is generally preferable to have a foreign jurisdiction apply its own laws, *see, e.g.*, *Hull 753 Corp. v. Elbe Flugzeugwerke GmbH*, 58 F. Supp. 2d 925, 930 (N.D. Ill. 1999), this preference is mitigated in the instant case given the many similarities that exist between the United Kingdom and United States judicial systems.

**D.     Private Interest Factors**

The following private interest factors are also to be considered: 1) the relative ease of access to sources of proof; 2) the ability to compel unwilling witnesses to attend and the cost of procuring the attendance of willing witnesses; 3) the possibility of viewing premises involved in the suit, if relevant; and 4) "all other practical problems that make a trial of a case easy, expeditious, and inexpensive." *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947).

The ease of access to sources of proof and the possibility of viewing premises involved in the suit are offsetting and do not favor one forum over the other. The particular items in dispute—the floor mats—are located within the Northern District, though these mats could be shipped to the United Kingdom, if necessary. Cannon argues that since it is alleged to have improperly produced the mats, it will be necessary to examine Cannon's United Kingdom production lines where the mats were produced. MacNeil responds that, to the extent this evidence is relevant, mechanisms other than an actual visit to the plant are preferable, including photographic

---

[4] MacNeil separately argues that its claim related to the Illinois Consumer Fraud Act ("ICFA") must be decided under Illinois law. This argument is technically correct, though misguided. State-specific laws like the ICFA pose a challenge not in choosing which state law to apply (that is obvious; only one state has an *Illinois* Consumer Fraud Act) but in determining whether the ICFA applies at all. The ICFA only applies if "the majority of circumstances relating to the alleged violation of the Consumer Fraud Act occurred [inside] of Illinois." *Landau v. CNA Fin. Corp.*, 886 N.E.2d 405, 409 (Ill. App. Ct. 2008). Based on the choice-of-law analysis in this order, the court is skeptical that an ICFA claim is viable. Nevertheless, the determination of this question will require interpretation of the ICFA, an Illinois law.

and video evidence and/or expert testimony on the same. At this time, MacNeil appears correct. The need to visit the production site of these floor mats seems improbable, and Cannon has failed to demonstrate that actual visits will be necessary. Therefore, the location of evidence does not compel a hearing in the United Kingdom.

The issue of witness availability also does not support the need for a hearing in the United Kingdom. Both parties plan on calling employees to testify, but courts do not generally consider the convenience of witness employees, for the employer-party can arrange for their presence. *See, e.g.*, *Ashmore v. Ne. Petroleum Div. of Cargill, Inc*., 925 F. Supp. 36 (D. Me. 1996). MacNeil also asserts that non-employee witnesses located in the United States and possibly in Asia will be called, though Cannon observes that these witnesses are outside of this district and possibly outside of the subpoena power of this court. The same is presumably true of a British court. This factor does not favor transfer to the United Kingdom.

Private interests do not strongly favor one forum over another.

### III. CONCLUSION

Both parties will be disadvantaged if their forum is not selected. When viewed in totality, the public and private factors slightly favor the United Kingdom as a forum, primarily because of the applicability of British law. However, Cannon must prove much more to prevail on a *forum non conveniens* claim. This forum will not be "oppressive and vexatious to" Cannon, and MacNeil's choice does not lack "specific reasons of convenience." *In re Ford Motor Co.*, 344 F.3d at 651–52; *Piper*, 454 U.S. at 249. Cannon has not satisfied its burden. The motion to dismiss under the doctrine of *forum non conveniens* is denied.

ENTER:

/s/
JOAN B. GOTTSCHALL
United States District Judge

DATED: January 8, 2009