UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MACNEIL AUTOMOTIVE PRODUCTS, LIMITED, an Illinois Corporation, )<br>)<br>Plaintiff, )<br>v. )<br>)<br>CANNON AUTOMOTIVE LIMITED, f/k/a )<br>CANNON RUBBER LIMITED, AUTOMOTIVE )<br>DIVISION, a United Kingdom Company, )<br>)<br>Defendant. ) | No. 08 C 0139<br><br>Judge Joan B. Gottschall |

**MEMORANDUM OPINION & ORDER**

Before the court are MacNeil Automotive Products, Limited's ("MacNeil's") and Cannon Automotive Limited's ("Cannon's") objections to Magistrate Judge Arlander Keys' November 2, 2010 Report and Recommendation on MacNeil's motion for entry of default judgment due to spoliation of evidence. For the reasons set forth below, Cannon's objections are overruled, some of MacNeil's objections are overruled, while some are sustained, and Judge Keys' Report and Recommendation is adopted in part.

**I.      BACKGROUND**

MacNeil brought this breach of contract action against Cannon alleging that Cannon supplied it with defective floor mats. For a more complete recitation of the underlying facts and history of the case, see the court's prior opinions. *See*, *e.g.*, *MacNeil Auto. Products Ltd. v. Cannon Auto. Ltd.*, No. 08 C 139, 2010 U.S. Dist. LEXIS 61001, at *1-6 (N.D. Ill. Apr. 15, 2010).

As Judge Keys explained:

On April 6, 2010, MacNeil filed a motion for sanctions against Cannon, [(Doc. 129),] alleging that Cannon had violated [his] order dated March 10, 2010[, (Doc.

1

125)]. Pursuant to that order, [Cannon] was to provide, by April 5, 2010, the remainder of documents responsive to [MacNeil's] Second Set of Document Requests. [(Doc. 125.)] When the deadline arrived, however, MacNeil was not provided any documents. Instead, Cannon indicated on that date that it 'agree[d] to make its facilities and any documents and information therein available for inspection, review and copying by MacNeil.' (MacNeil's Mot. for Sanctions against Cannon Ex. 1, ECF No. 129-2.) The inspection was to take place at Cannon's facility located in London, England.

Cannon's disregard of the order caused [Judge Keys] to grant [MacNeil's] motion and allow [MacNeil's] counsel to travel to England, at Cannon's expense, to inspect the relevant facilities, equipment, and all responsive documents by June 1, 2010. [(Docs. 137-38.)] In early May, [MacNeil's] attorneys made the journey and what they saw . . . or, rather, did *not* see, forms the basis of [MacNeil's motion for default judgment]. To be sure, [MacNeil's] counsel discovered upon arrival that 'Cannon's facility is entirely gutted, with nothing but yellow tape around empty buildings. Cannon's entire manufacturing lines, processes and all of its manufacturing equipment ha[s] been 'sold or moth-balled.'' (Pl.'s Mot. for [Default Judgment at 1.]) This process, [MacNeil's] attorneys were told, took place in 'mid-2008' – shortly after the commencement of the instant litigation and almost two full years before Cannon notified MacNeil and the [c]ourt that it would make its facilities available for inspection. (*Id.*)

After discovering that the manufacturing operation was nothing more than a 'ghost-town,' [MacNeil's] counsel went to a designated 'conference room where stacks of paper were present on a circular table.' (*Id.* at 2, 14.) Though they were initially encouraged by the 'fairly sizeable collection of documents.' They soon realized, to their dismay, that '99.9% of the documents on the table were nothing more than orders and invoices' – records that MacNeil contends are 'essentially worthless and mean nothing to the case.' (*Id.* at 14.) But having been 'jammed together on a plane for more than ten hours,' (Mot. for Enforcement of This Ct.'s Apr. 12, 2010 Order 2, ECF No. 153,) [MacNeil's] counsel were determined to obtain the documents that they began the journey in search of. (Pl.'s Mot. for [default judgment at 14.]) Consequently, 'MacNeil's counsel began looking around the conference room and saw that there were stacks of documents that were thrown in the corner and buried underneath a bunch of junk.' (*Id.* at 14-15.) When they began to review the records, Cannon's attorney informed them that the documents were 'not meant/designated for review.' (*Id.* at 15.) When he failed to object, however, they continued and discovered that the documents were precisely those that they sought. (*Id.*)

Mag. J. Keys' Report and Recommendation at 2-4 (footnote omitted.)

On June 25, 2010, MacNeil moved for default judgment against Cannon because of alleged spoliation of evidence and discovery violations. (*See* Doc. 156.) MacNeil also sought its

2

attorney's fees and costs for all discovery matters since the date of the alleged spoliation (*See* Mot. for Default Judgment at 17.) On November 2, 2010, Judge Keys entered a Report and Recommendation recommending that this court deny MacNeil's motion and sanction Cannon for spoliation of evidence. (Doc. 219.) Specifically, Judge Keys recommended: (1) "that Cannon be prohibited from introducing any evidence regarding the proper functioning of the equipment [used to manufacture the floor mats] and that it be precluded from arguing that MacNeil or a third party caused the defects," and (2) that MacNeil be awarded its "attorney's fees and costs for all discovery matters related to the manufacturing equipment . . . from the date of spoliation." Mag. J. Keys' Report and Recommendation at 19.

Both Cannon and MacNeil have objected. (*See* Docs. 225-26.) MacNeil objects to Judge Keys' Report and Recommendation to the extent that he found that default judgment was not warranted, denied MacNeil's requested sanctions, and did not consider MacNeil's argument that Cannon's counterclaim should be dismissed. (*See* MacNeil's objection at 1.) Cannon argues that Judge Keys' Report and Recommendation is clearly erroneous because it fails to consider all relevant facts or actually find that Cannon's spoliation of evidence prejudiced MacNeil. (*See* Cannon's objection at 1, 10.)

## II. Legal Standard

Federal Rule of Civil Procedure 72 allows parties to file objections to a magistrate judge's order or report and recommendation within 14 days after being served with a copy. Fed. R. Civ. P. 72. "Upon objection, the district judge must review the relevant part of the magistrate judge's decision." *Schur v. L.A. Weight Loss Centers, Inc.*, 577 F.3d 752, 760 (7th Cir. 2009). For dispositive matters, the district court must "determine de novo any part of the magistrate judge's disposition that has been properly objected to," Fed. R. Civ. P. 72(b), while for

3

nondispositive matters, the district judge must "modify or set aside any part of the order that is clearly erroneous or is contrary to law," Fed. R. Civ. P. 72(a).

The parties dispute whether the court should treat this as a dispositive or a nondispositive matter. Whether the district judge treats a matter as dispositive or non-dispositive depends not on the relief sought, but on the relief entered. *Gomez v. Martin Marietta Corp.*, 50 F.3d 1511, 1519-20 (10th Cir. 1995) ("Even though a movant requests a sanction that would be dispositive, if the magistrate judge does not impose a dispositive sanction the order falls under Rule 72(a) rather than Rule 72(b)." (citing 7 James W. Moore et al., Moore's Federal Practice, P 72.04[2.-4], at 72-66 (2d ed. 1994), and *Ocelot Oil Corp. v. Sparrow Indus.*, 847 F.2d 1458, 1462 (10th Cir. 1988)); 12 Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 3068.2 (2d ed. 1997) ("The critical issue here is what sanction the magistrate judge actually imposes, rather than one requested by the party seeking sanctions.")

Here, although Judge Keys declined to recommend default judgment, he did recommend an award of attorney's fees and sanctions – specifically, "that Cannon be prohibited from introducing any evidence regarding the proper functioning of the equipment [used to manufacture the floor mats] and that it be precluded from arguing that MacNeil or a third party caused the defects." Mag. J. Keys' Report and Recommendation at 19. That portion of Judge Keys' Report and Recommendation recommending that MacNeil be awarded attorney's fees is dispositive and will be reviewed de novo. *See Alpern v. Lieb*, 38 F.3d 933, 935 (7th Cir. 1994) (reasoning that attorney's fees are treated as separate claims for purposes of appellate jurisdiction, and that, given that an award of monetary sanctions causes money to change hands, it is akin to an award of damages, so that the power to award monetary sanctions belongs with the district judge.); *see also Kucala Enterprises, Ltd. v. Auto Wax Co., Inc.*, 2003 WL 22433095,

at *1 (N.D. Ill. Oct. 27, 2003) (reviewing de novo a magistrate judge's recommendation that a party be awarded attorney's fees incurred in bringing a motion for sanctions). Similarly, that portion of Judge Keys' Report and Recommendation recommending sanctions is dispositive of a claim or defense because it precludes Cannon from mounting the defense that MacNeil or a third party caused the floor mats to be defective. *See Retired Chi. Police Ass'n v. City of Chi.*, 76 F.3d 856, 869 (7th Cir. 1996) ("[R]esolution of a sanctions request is a dispositive matter capable of being referred to a magistrate judge only under § 636(b)(1)(B) or § 636(b)(3), where the district judge must review the magistrate judge's report and recommendation *de novo*."); *see also Yang v. Brown Univ.*, 149 F.R.D. 440, 442-43 (D.R.I. 1993) (holding that the magistrate judge's order on a motion for Rule 37 discovery sanctions "crossed the line from non-dispositive to dispositive decision-making" where it "vitiate[d] [the] plaintiff's case" by excluding an expert witness without whom the plaintiff could not make a prima facie case and was therefore "tantamount to an involuntary dismissal.") Thus, the court's review of Judge Keys' Report and Recommendation will be de novo. Under this standard, the court must "give 'fresh consideration to those issues to which specific objections have been made.'" *Rajaratnam v. Moyer*, 47 F.3d 922, 924 n.8 (7th Cir. 1995).

### III. Analysis

#### A. MacNeil's objections

MacNeil objects to Judge Keys' conclusion that default judgment is not warranted because Cannon's spoliation of evidence did not prejudice MacNeil to such an extent that MacNeil is unable to marshal any evidence in support of its case. (Pl.'s Objections at 8.) MacNeil argues that, while it does have some evidence with which to prove its case, Cannon's spoliation still significantly prejudiced its ability to rebut Cannon's contention that the

5

percentage of mats that were defective cannot be as high as MacNeil contends. (*Id.*). Had Cannon not spoliated evidence, MacNeil could have inspected the manufacturing equipment to determine if there was a systematic flaw in the manufacturing process that caused a high rate of defects. (*Id.*) MacNeil further argues that Cannon should not be able to escape responsibility for its actions. (*Id.* at 9-10.)

The court agrees that MacNeil's ability to rebut this contention of Cannon's was significantly prejudiced. However, the court also agrees with Judge Keys that this case is not an exception to the well-established rule that "Justice is best served by allowing cases to be heard on their merits." Mag. J. Keys' Report and Recommendation at 18 (citing *Wiginton v. CB Richard Ellis*, No. 02 C 6832, 2003 WL 22439865, at *6 (N.D. Ill. Oct. 27, 2003)). Thus, this objection is overruled. However, to address MacNeil's concern, Cannon is prohibited from arguing or introducing any evidence to show that its manufacturing process did not produce as high a rate of defects as MacNeil claims. Thus, MacNeil can rest assured that Cannon is not escaping responsibility for its transgressions.

Next, in the event that the court finds (as it has) that default judgment is not warranted, MacNeil asks for an order that: (a) the mats in MacNeil's possession shall determine whether Cannon sold defective product and (b) prohibiting Cannon from introducing any evidence or argument that the mats no longer in the parties' possession were different from the mats in MacNeil's possession. MacNeil argues that such an order is appropriate since Cannon argued that "the only relevant evidence . . . is the mats themselves." (Pl.'s Objections at 10 (quoting Def.'s Resp. in Opp'n to Pl.'s Mot. for Entry of a Default J. at 4.)). This court agrees that the second part of MacNeil's proposed order is appropriate. Therefore, it is hereby ordered that

Cannon is prohibited from introducing any evidence or argument that the mats no longer in the parties' possession were different from the mats in the parties' possession.

Lastly, MacNeil objects that Judge Keys declined to consider its arguments regarding Cannon's counterclaim. (Pl.'s Objections at 11.) In his Report and Recommendation, Judge Keys noted, "MacNeil, in its reply brief, raised for the first time, the argument that dismissal of Cannon's counterclaim is an appropriate sanction in light of Cannon's spoliation of the evidence at issue." (Mag. J. Keys' Report and Recommendation at 21 n.6.) Judge Keys continued, "Because Cannon has not had the opportunity to respond to said argument, the Court, in fairness to Cannon, declines to make any recommendation as to this issue." (*Id.*). MacNeil explains that it raised this argument for the first time in its reply brief because Cannon did not file its counterclaim until after MacNeil's opening brief. (Pl.'s objections at 3-4.) Nevertheless, according to MacNeil, Cannon had an opportunity to respond to MacNeil's arguments about its counterclaim in the surreply. (*Id.* at 3, 11) In fact, according to MacNeil, Judge Keys granted Cannon leave to file a surreply specifically so that Cannon would have an opportunity to address MacNeil's arguments about its counterclaim. (*Id.* at 11.) In support of this assertion, MacNeil offers an excerpt from a transcript of a hearing at which MacNeil indicated that it had no objection to allowing Cannon to respond to the argument about its counterclaim. (*See id.* Ex. 1.) This court cannot tell from this transcript excerpt exactly why Judge Keys granted Cannon leave to file a surreply. Nevertheless, the court notes that Judge Keys wrote in his Report and Recommendation that he ordered "that Cannon raise in its surreply . . . new matters argued by MacNeil in its reply brief." (Mag. J. Keys' Report and Recommendation at 3.) Given this, the court is satisfied that Cannon had an opportunity to respond to MacNeil's argument about its counterclaim, but apparently declined to do so. Thus, this objection is sustained.

Cannon has brought breach of contract and promissory estoppel counterclaims, seeking relief for $1,400,000 of damages Cannon alleges it incurred when it was left with three months of mat inventory after its business relationship with MacNeil ended. MacNeil argues that this court should dismiss Cannon's counterclaim as a sanction for Cannon's spoliation of evidence. The court declines to do so.

B. Cannon's objections

Cannon objects that Judge Keys failed to consider that: (a) MacNeil disavowed any interest in the machinery, (b) in mid-2008, some of the machinery was mothballed, not destroyed, (c) Cannon submitted evidence (in its surreply) that the last press was not sold until November 19, 2009, (d) MacNeil's lawyers arrived in London without an expert, equipped only with a video camera, (e) the parties already have video of Cannon's manufacturing process, (f) manufacturing ceased in mid-2008, and (g) "live" tests of machinery could not have taken place after the factory shut down. (Def.'s Objections at 5-9.) These arguments are not persuasive. Judge Keys did consider that MacNeil previously suggested that the machinery was not relevant. (*See* Mag. J. Keys' Report and Recommendation at 8-9.) As to the second "key fact," Cannon itself concedes that some of the machinery was sold. That is enough to support a finding that Cannon spoliated evidence.

Cannon submitted evidence of its third "key fact" in its surreply. Judge Keys disregarded Cannon's surreply and the attached affidavit because Cannon "blatant[ly] disregard[ed Judge Keys'] order that Cannon raise in its surreply only new matters argued by MacNeil in its reply brief." (Mag. J. Keys' Report and Recommendation at 3 n.1.) This court finds that Judge Keys was justified in doing so. However, even considering Cannon's surreply, the court still finds that Cannon spoliated evidence. In its surreply, Cannon claims that, contrary to Judge Keys' finding

that the selling and mothballing process "took place in" mid-2008, it only *began* the process of selling or moth-balling its manufacturing equipment in mid-2008, such that some of the equipment was still on Cannon's premises as recently as March 2010. (Def.'s surreply Ex. G (Robert Peacock attesting that "It is true that factory equipment was sold or mothballed from mid-2008 onward.")  It does not matter that Cannon only began the process of spoliating evidence in mid-2008; what matters is that any spoliation occurred at all. In its surreply, Cannon offers to help MacNeil track one of the manufacturing presses down. (Def.'s surreply at 3.) Cannon's offer of this "remedy" at this late date does not cure Cannon's initial, admitted spoliation.

As to the last four "key facts" that Cannon claims Judge Keys did not take into account, Cannon appears to argue that any spoliation of evidence was harmless since MacNeil was not prepared to conduct tests of the manufacturing equipment anyway. This argument is unpersuasive. Had MacNeil's attorneys actually encountered the machinery for which they were searching, they could have arranged for a follow-up visit to complete testing.

Lastly, Cannon objects that Judge Keys failed to make an actual finding of prejudice. This argument is unpersuasive. To the extent that Judge Keys' finding was more implicit than explicit, this court now finds that MacNeil was prejudiced by Cannon's spoliation of evidence.

Given the foregoing, Cannon's objections are overruled.

### IV.    Conclusion

Given all of the above, Cannon's objections are overruled, some of MacNeil's objections are overruled, while some are sustained, and Judge Keys' Report and Recommendation is adopted insofar as this court denies MacNeil's motion for default judgment, but grants the following sanctions:

9

(a) Cannon is prohibited from arguing or introducing any evidence to show that:

    (i) the equipment functioned properly

    (ii) MacNeil or a third party caused the defects to the mats

    (iii) its manufacturing process did not produce as high a rate of defects as MacNeil claims.

    (iv) the mats no longer in the parties' possession are different from the mats in the parties' possession.

(b) Cannon shall reimburse MacNeil for its attorney's fees and costs for all discovery matters related to the manufacturing equipment from the date of spoliation.

MacNeil shall file a fee petition setting forth the amount of reasonable attorney's fees and other expenses incurred for discovery matters related to the manufacturing equipment from the date of spoliation by March 4, 2011. If Cannon wishes to file a response, it may do so by March 18, 2011. If MacNeil wishes to file a reply, it may do so by March 25, 2011.

ENTER:

                                                                            /s/
                                                          JOAN B. GOTTSCHALL
                                                          United States District Judge

DATED: March 1, 2011