UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MACNEIL AUTOMATIVE PRODUCTS LIMITED, an Illinois Corporation, | ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Case No. 08 C 0139 |
| CANNON AUTOMOTIVE LIMITED, f/k/a CANNON RUBBER LIMITED, AUTOMOBILE DIVISION, and C.A. HOLDINGS, plc, United Kingdom Companies, | ) ) ) ) ) ) ) | Judge Joan B. Gottschall |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

MacNeil Automotive Products Limited ("MacNeil") initially named only Cannon Automotive Limited ("Cannon") as a defendant in this lawsuit, but subsequently filed a second amended complaint adding C.A. Holdings, plc ("C.A."), Cannon's parent company, as a defendant. C.A. has moved to dismiss MacNeil's second amended complaint on the basis of *forum non conveniens* or, alternatively, for lack of personal jurisdiction. MacNeil asks this court to deny C.A.'s motion to dismiss or, in the alternative, to wait to rule on the motion until MacNeil has the opportunity to take additional discovery. Because the court concludes it lacks personal jurisdiction over C.A., the motion to dismiss is granted.

**I.   BACKGROUND**

MacNeil, an Illinois corporation, manufactures and supplies automotive accessories such as floor liners and mats for various automobile manufacturers. Cannon, an English corporation, manufactures and supplies rubber floor mats for automobiles. C.A., also incorporated in

1

England, is Cannon's parent corporation. According to MacNeil, Mr. Edward Atkin and his family own almost 100% of the shares in both Cannon and C.A.

MacNeil and Cannon began doing business together in 1989. The relationship between these parties began to deteriorate based on orders filled in 2001 and 2004, and in January 2008 MacNeil filed a complaint against Cannon in this court.[1] In the second amended complaint, MacNeil has alleged nine counts, only two of which are directed at C.A: Count VIII, entitled "Alter Ego/Piercing the Corporate Veil," alleges that C.A. is the alter ego of Cannon and that the defendants inadequately capitalized Cannon, failed to observe corporate formalities, failed to act in Cannon's best interests, and removed substantial assets from Cannon to other wholly owned and controlled subsidiaries. Count IX, entitled "Substantial Control," alleges that C.A. exerted "total control" over Cannon's operations and that C.A. fraudulently transferred Cannon's assets to itself. In relevant part, MacNeil requests that this court pierce Cannon's corporate veil and hold Cannon and C.A. jointly and severally liable for any judgment or damages. Cannon answered this amended complaint, setting forth various affirmative defenses and counterclaims, whereas C.A. filed the motion to dismiss presently at issue.

## II. LEGAL STANDARD

A party may move to dismiss the claims against it if the court lacks personal jurisdiction over that party. *See* Fed. R. Civ. P. 12(b)(2); *Philos Techs., Inc. v. Philos & D, Inc.*, 645 F.3d 851, 855 (7th Cir. 2011) ("A court without personal jurisdiction of the defendant is wholly without power to proceed to an adjudication binding on that defendant.") (internal quotations and

---

[1] For a fuller recitation of the facts underlying this case, see *MacNeil Automotive Products Ltd. v. Cannon Automotive Ltd.*, No. 08 C 0139, 2009 WL 65498 (N.D. Ill. Jan. 8, 2009). For the court's prior rulings on issues between MacNeil and Cannon, see *MacNeil Automotive Products Ltd. v. Cannon Automotive Ltd.*, No. 08 C 0139, 2011 WL 812140, *1-2 (N.D. Ill. Mar. 1, 2011), *MacNeil Automotive Products Ltd. v. Cannon Automotive Ltd.*, No. 08 C 0139, 2010 WL 4823592 (N.D. Ill. Nov. 19, 2010), and *MacNeil Automotive Products Ltd. v. Cannon Automotive Ltd.*, 715 F. Supp. 2d 786, 789 (N.D. Ill. 2010).

citation omitted). The plaintiff's original complaint need not include facts in support of personal jurisdiction, but if a defendant moves to dismiss under Rule 12(b)(2), the plaintiff bears the burden of establishing that the court has personal jurisdiction. *Purdue Research Found. v. SanofiSynthelabo, S.Am.*, 338 F.3d 773, 782 (7th Cir. 2003). When the district court holds an evidentiary hearing to determine jurisdiction, the plaintiff's burden is preponderance of the evidence, but when the court proceeds based on written submissions, the plaintiff need only make out a *prima facie* case. *See uBID, Inc. v. GoDaddy Grp., Inc.*, 623 F.3d 421, 423-24 (7th Cir. 2010) (citing *Tamburo v. Dworkin*, 601 F.3d 693, 700 (7th Cir. 2010) and *Purdue*, 338 F.3d at 782).

In addition to the well-pleaded facts in the complaint, the court may also consider facts set forth in affidavits. *Tamburo*, 601 F.3d at 700 ("At this stage . . . we take as true all well-pleaded facts alleged in the complaint and resolve any factual disputes in the affidavits in favor of the plaintiff."); *Wendt v. Handler, Thayer & Duggan, LLC*, 613 F. Supp. 2d 1021, 1027 (N.D. Ill. 2009) ("In determining whether a *prima facie* case has been established, the Court can consider materials such as affidavits.") (citing *Purdue*, 338 F.3d at 782). But although factual disputes must be resolved in the plaintiff's favor, the Seventh Circuit has endorsed the view that the plaintiff cannot rest on its pleadings "once the defendant has submitted affidavits or other evidence in opposition to the exercise of jurisdiction"; at that point, the plaintiff must "submit affirmative evidence supporting the exercise of jurisdiction." *Purdue*, 338 F.3d at 782-83; *see C.S.B. Commodities, Inc. v. Urban Trend (HK) Ltd.*, 626 F. Supp. 2d 837, 843 (N.D. Ill. 2009) ("The Court resolves factual disputes in the pleadings and affidavits in favor of the party asserting jurisdiction, but takes as true those facts contained in defendant's affidavits that remain unrefuted by the plaintiff.").

## III. ANALYSIS

In this case, MacNeil has alleged diversity jurisdiction under 28 U.S.C. § 1332(a)(2). "A federal court exercising diversity jurisdiction has personal jurisdiction only where a court of the state in which it sits would have such jurisdiction. Illinois extends personal jurisdiction to the limits allowed by the United States Constitution, so the state and federal standards are congruent here." *Philos Techs., Inc.*, 645 F.3d at 855 n.1 (citing *RAR, Inc. v. Turner Diesel, Ltd.*, 107 F.3d 1272, 1275 (7th Cir. 1997) and *Citadel Grp. Ltd. v. Washington Regional Med. Ctr.*, 536 F.3d 757, 760-61 (7th Cir. 2008)); *see* 735 Ill. Comp. Stat. 5/2-209 ("A court may also exercise jurisdiction on any other basis now or hereafter permitted by the Illinois Constitution and the Constitution of the United States."). For this reason, the court need only consider whether requiring C.A. to defend a lawsuit in this court is consistent with the requirements of federal due process.

The Due Process Clause is satisfied where a defendant has minimum contacts with Illinois such that requiring it to defend against a lawsuit in that state "'does not offend traditional notions of fair play and substantial justice.'" *be2 LLC v. Ivanov*, 642 F.3d 555, 558 (7th Cir. 2011) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1940)). The "minimum contacts" must be more than simply fortuitous; instead, the defendant must have "purposefully availed itself of the privileges" of conducting activity within Illinois, and the defendant must "reasonably anticipate being haled into court" there. *Kinslow v. Pullara*, 538 F.3d 687, 691 (7th Cir. 2008) (quoting *Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 712 (7th Cir. 2002)); *see Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474-75 (1985). This ensures that a non-resident will not have to litigate in a jurisdiction as a result of a random contact with the forum or the unilateral activity of the plaintiff. *Burger King Corp.*, 471 U.S. at 475 (citations omitted).

Depending on defendant's contacts with the forum, personal jurisdiction can be general or specific. *See Tamburo*, 601 F.3d at 701. General jurisdiction exists when the defendant's contacts with the forum are unrelated to the plaintiff's claim but are nevertheless continuous and systematic. *Id.* (citing *Helicopteros Nacionales de Colombia, S.Am. v. Hall*, 466 U.S. 408, 416 (1984)). "The threshold for general jurisdiction is high; the contacts must be sufficiently extensive and pervasive to approximate physical presence." *Id.* (citing *Purdue*, 338 F.3d at 787 n.16). Specific jurisdiction, by contrast, is determined "by reference to the particular conduct underlying the claims made in the lawsuit." *Id.* at 702 (citing *GCIU-Employer Ret. Fund v. Goldfarb Corp.*, 565 F.3d 1018, 1024 (7th Cir. 2009)).

## A. "Systematic and Continuous" Contacts with Illinois

MacNeil has alleged that the court has jurisdiction over C.A. by virtue of C.A.'s "systematic and continuous business connections and contacts with Illinois." With respect to these general jurisdiction allegations, C.A. acknowledges that Cannon has conducted business within Illinois—in fact, Cannon has admitted that the court has personal jurisdiction over it by virtue of its systematic and continuous contacts with the state (*see* Answer to Second Am. Compl. ¶ 3, ECF No. 238; Answer to First Am. Compl. ¶ 3, ECF No. 164)—but C.A. claims that C.A. has "neither purchased nor sold goods or services to or from this jurisdiction, or any jurisdiction, in the course of its five year existence" and that there is no basis for MacNeil's allegation that C.A. "has had *any* contact with Illinois." (*See* Mem. in Supp. of Mot. to Dismiss, at 2, ECF No. 250-1.) In support, C.A. has provided an affidavit from its Chief Financial Officer, Dermot O'Brien, in which he states that C.A. operates only as a holding company and has no contact with the United States. (*See* Def.'s Mot. to Dismiss, Ex. A, ECF No. 250-2.)

In its response, MacNeil does not direct any argument or provide any facts in support of its general jurisdiction argument, nor did it provide any well-pleaded facts in support of C.A.'s "systematic and continuous business connections" with Illinois in its complaint. Because MacNeil has provided no evidence to support its allegation, it cannot meet its burden of establishing a *prima facie* case for general jurisdiction.

**B. Jurisdiction Based on the Parent-Subsidiary Relationship**

MacNeil alleges two alternate bases for this court to exercise personal jurisdiction over C.A.: that C.A. is the alter ego of Cannon, and that C.A. exercises substantial control over Cannon.[2] Because this court has personal jurisdiction over Cannon, if these factual allegations are adequately supported, the court could potentially exercise personal jurisdiction over C.A. as well. *See Central States, Se. & Sw. Areas Pension Fund v. Reimer Express World Corp.*, 230 F.3d 934, 943 (7th Cir. 2000) ("[W]e hold that constitutional due process requires that personal jurisdiction cannot be premised on corporate affiliation or stock ownership alone where corporate formalities are substantially observed and the parent does not exercise an unusually high degree of control over the subsidiary."). On the other hand, if MacNeil does not meet its burden of establishing that C.A. is the alter ego of, or exercises an unusual degree of control over, Cannon, then this court has no basis for exerting jurisdiction over C.A. *See Purdue*, 338 F.3d at 788 n.17 (noting the "general rule" that "the jurisdictional contacts of a subsidiary corporation are not imputed to the parent") (citations omitted).

---

[2] C.A. addresses this argument as being related to the question of specific jurisdiction, but the second amended complaint makes it clear that MacNeil only asserts personal jurisdiction over Cannon by virtue of Cannon's continuous and systematic contacts with Illinois, not "by reference to the particular conduct underlying the claims made in the lawsuit." *See Tamburo*, 601 F.3d at 701.

**1. Alter Ego/Piercing the Corporate Veil**

The court turns first to whether MacNeil has established that C.A. is the alter ego of Cannon. As a preliminary matter, the parties disagree as to whether the court should evaluate the relationship between C.A. and Cannon by reference to English or Illinois law. But "'[a]lthough the law of the state of incorporation applies when a party seeks to substantively pierce a corporation's veil, Illinois law governs the analysis where a party uses veil piercing to establish personal jurisdiction.'" *Poulsen Roser A/S v. Jackson & Perkins Wholesale, Inc.*, No. 10 C 1894, 2010 WL 3419460, at *3 (N.D. Ill. Aug. 26, 2010) (quoting *Old Orchard Urban Ltd. P'ship v. Harry Rosen, Inc.*, 904 N.E.2d 1050 (Ill. App. Ct. 2009)). "Under the law of Illinois, a party seeking to disregard the corporate entity because the targeted corporation is merely the alter ego of the dominating personality 'must show that (1) there is such a unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist; and (2) circumstances are such that adhering to the fiction of a separate corporate existence would promote injustice or inequity.'" *Int'l Fin. Servs. Corp. v. Chromas Techs. Canada, Inc.*, 356 F.3d 731, 736 (7th Cir. 2004) (quoting *Melko v. Dionisio*, 580 N.E.2d 586, 594 (Ill. App. Ct. 1991) (emphasis omitted)). "Unity of interest" is evaluated using a variety of factors, which may include "(1) inadequate capitalization; (2) failure to issue stock; (3) failure to observe corporate formalities; (4) nonpayment of dividends; (5) insolvency of the debtor corporation; (6) nonfunctioning of the other officers or directors; (7) absence of corporate records; (8) commingling of funds; (9) diversion of assets from the corporation by or to a stockholder or other person or entity to the detriment of creditors; (10) failure to maintain arm's-length relationships among related entities; and (11) whether, in fact, the corporation is a mere facade for the operation of the dominant stockholders." *Judson Atkinson Candies, Inc. v. Latini-*

*Hohberger Dhimantec*, 529 F.3d 371, 379 (7th Cir. 2008) (quoting *Fontana v. TLD Builders, Inc.*, 840 N.E.2d 767, 778 (Ill. App. Ct. 2005)); *see Laborers' Pension Fund v. Lay-Com, Inc.*, 580 F.3d 602, 610-11 (7th Cir. 2009). Of these, "the focus is on whether the corporations have respected corporate formalities—respected their separateness from each other—or whether one was a sham acting at the whim of the other." *Laborers' Pension Fund*, 580 F.3d at 610-11.

MacNeil argues the following facts establish a unity of interest between C.A. and Cannon: (1) at least one "substantial" asset (real estate) was transferred from Cannon to C.A. during the course of this litigation without adequate consideration; (2) C.A. and Cannon share nearly all of the same owners, officers, and directors; (3) Cannon is significantly undercapitalized, has no significant assets, and receives capital from Mr. Atkin (the nearly 100% owner of both C.A. and Cannon) via "significant, no interest loans" from C.A.; (4) Cannon has "significant" debts to C.A., but does not consider these to be "real debts"; (5) Cannon's prior counsel designated Cannon and C.A. as "also known as" parties in a prior pleading, and Mr. Atkin was served with this pleading at C.A.'s offices; (6) Cannon has represented that the "Cannon group" has substantial assets and that Cannon can meet all of its obligations by virtue of its support from C.A. or the Cannon group; (7) Mr. Atkin directs the trading activities of Cannon from C.A.'s offices and email accounts; and (8) C.A. was formed to allow Mr. Atkin to manage the day-to-day operations at Cannon and to oversee all material decisions. In addition, MacNeil states that it is "confident" that further discovery would show Cannon failed to maintain adequate corporate records and comply with corporate formalities, although it admits that Cannon and C.A. filed "separate, annual financial statements." (*See* Second Am. Compl., ECF No. 235, ¶¶ 38-50.)

For its part, C.A. relies on Mr. O'Brien's affidavit, in which he swears in relevant part that C.A. operates as a holding company, and that while C.A. provides Cannon certain "'back room' services such as legal, secretarial, treasury and other normal services associated with a holding company," the two corporations observe the relevant corporate formalities. He also states that C.A. and Cannon were separately incorporated and operate out of different locations, that each year they file separate audited financial statements, and that any transfers between the two companies have always been for value and have been properly recorded under English accounting practices.

Certain of the alleged facts are not very helpful to this analysis. For instance, the Seventh Circuit has made it clear that "a corporate parent may provide administrative services for its subsidiary in the ordinary course of business without calling into question the separateness of the two entities for purposes of personal jurisdiction." *Reimer*, 230 F.3d at 945. Thus, the fact that C.A. has admitted to providing certain "back room" services to Cannon does not tip the scale one way or the other. Further, "[w]hile having common officers and directors is generally a prerequisite to piercing the corporate veil, this factor is insufficient to justify disregarding the corporate form because it is a 'common business practice' that 'exist[s] in most parent and subsidiary relationships.'" *Judson Atkinson Candies, Inc.*, 529 F.3d at 381 (quoting *CM Corp. v. Oberer Dev. Co.*, 631 F.2d 536, 539 (7th Cir. 1980)). This means that Atkin's ownership in both the parent and the subsidiary, as well as the overlap in officers and directors, does not by itself warrant piercing the corporate veil.

By contrast, the court places great weight upon the fact that MacNeil provides no support for its argument that C.A. and Cannon failed to observe corporate formalities. While MacNeil may be "confident" that further discovery would prove its point, this is putting the cart before the

horse: "At a minimum, the plaintiff must establish a colorable or prima facie showing of personal jurisdiction before discovery should be permitted. Foreign nationals usually should not be subjected to extensive discovery in order to determine whether personal jurisdiction over them exists." *Reimer*, 230 F.3d at 946. Moreover, MacNeil has obtained fact discovery from Cannon, and this discovery should have assisted MacNeil in providing at least some support for its claim that C.A. and Cannon failed to maintain separate corporate identities.

Likewise, MacNeil has not supported its claim that Cannon is undercapitalized with any facts. This factor is highly relevant to the court's analysis. *See Laborers' Pension Fund*, 580 F.3d at 612 ("Aside from these indicia of corporate form and control, undercapitalization is the single most important factor in the veil-piercing analysis."). MacNeil claims that Cannon's last remaining asset—certain real property—was transferred from Cannon to another C.A. subsidiary, and highlights deposition testimony discussing Cannon's debts. However, MacNeil provides nothing substantive to rebut C.A.'s evidence that the real estate in question was valued appropriately (*i.e.*, that the costs to clean up the property arguably exceeded the value of the property), and "[t]he fact that a corporation is losing money does not show that it is undercapitalized." *Judson Atkinson Candies, Inc.*, 529 F.3d at 379.

Thus, the two most important considerations—observation of corporate formalities and undercapitalization—do not support the conclusion that C.A. is the alter ego of Cannon, and MacNeil's remaining allegations are largely unsupported by the record. For instance, MacNeil claims that C.A. was formed to allow Mr. Atkin to manage the day-to-day operations at Cannon and to oversee all material decisions, and that Mr. Atkin directed the trading activities of Cannon from C.A.'s offices and email accounts. In support, however, MacNeil cites to an affidavit that states Mr. Atkin usually uses a C.A. email address, that he was "heavily involved" in the day-to-

day operations of Cannon, and that he instructed Cannon using his C.A. email. But none of this is damning; Mr. Atkin is majority owner of Cannon, so he would be expected to be heavily involved in Cannon's operations. Likewise, he is the majority owner of C.A. and would be expected to have a C.A. email address that he might also use to communicate with C.A.'s subsidiaries. These facts do not support MacNeil's claim of impropriety.

Because MacNeil has not established that Cannon and C.A. failed to observe corporate formalities, that Cannon was undercapitalized, or that other persuasive factors outweigh these two important considerations, MacNeil has not established unity of interest between C.A. and Cannon, and cannot prevail on its alter ego theory. *See Int'l Fin. Servs. Corp.*, 356 F.3d at 736.

### 2. Substantial Control

Finally, MacNeil argues that C.A. exerts an unusually high degree of control over Cannon. Of course, "'[p]arents of wholly owned subsidiaries necessarily control, direct, and supervise the subsidiaries to some extent,'" so the question is whether the degree of control exercised by C.A. exceeds the amount of control wielded in a typical parent-subsidiary relationship. *See Erie Foods Int'l v. Apollo Group & Apollo USA, Inc.*, No. 04 C 6610, 2006 WL 932344, at *3 (N.D. Ill. Apr. 10, 2006) (quoting *IDS Life Ins. Co. v. SunAm. Life Ins. Co.*, 136 F.3d 537, 540 (7th Cir. 1998)); *LaSalle Nat'l Bank v. Vitro, Sociedad Anonima*, 85 F. Supp. 2d 857, 864 (N.D. Ill. 2000) ("The problem thus faced by courts is determining just how much control is enough to fall within the exception."). This inquiry is necessarily a flexible one, as "how much control [is] needed is hard to state with any precision." *LaSalle Nat'l Bank*, 85 F. Supp. 2d at 865. It is clear, however, that "substantial control need not mean total control." *Erie Foods Int'l*, 2006 WL 932344, at *3 (citing *LaSalle Nat'l Bank*, 85 F. Supp. 2d at 864-65 and

*Liberty Mut. Fire Ins. Co. v. Reimer Express Enters., Ltd.*, 82 F. Supp. 2d 887, 890 (N.D. Ill. 2000)).

As with the alter ego analysis, Illinois courts reference a number of factors that are useful in evaluating whether a parent exercises substantial control over the subsidiary. *See id.* Here, each party argues that certain relevant factors favor its position. Citing the same deposition testimony discussed above (which does not support MacNeil's point), MacNeil argues that Mr. Atkin, through C.A., "controlled every aspect of Cannon's day to day operations" out of his C.A. office, the two companies were held out as a "group" to Cannon's trading partners, and Cannon's directors (Mr. Atkin and his wife) overlap significantly with C.A.'s directors (Mr. Atkin, his wife, and his children).

C.A., however, has offered Mr. O'Brien's affidavit, which establishes that C.A. did not create Cannon, and that the entities were created at the same time following a demerger of yet another company; Cannon does not exist to sell, promote, or distribute any good from C.A., nor does Cannon purchase inventory from C.A.; C.A. and Cannon operate out of different locations; and any transfers involving the assets of C.A. or Cannon are recorded on the books according to standard English accounting practices. Mr. O'Brien further notes that C.A. does not pay the salaries of Cannon's directors and the companies have separate payrolls; Cannon has no legal obligation to, and does not, apprise C.A. of all aspects of its business; C.A. does not direct or control Cannon's choice of dealers, designation of products and services, stock levels, or methods of ordering; Cannon has never been described as a department or division of C.A.; and Cannon employees do not operate under the authority of C.A.'s officers.

Thus, while it is true that significant overlap exists between C.A.'s and Cannon's officers, owners, and directors, MacNeil has not established that C.A. exercises the type of "day-

to-day management control" over Cannon that would justify the court exercising personal jurisdiction over C.A. *See Reimer*, 230 F.3d at 945. While C.A. certainly exercises some control over Cannon's operations, the amount of control appears to be in keeping with the typical parent-subsidiary relationship.

### IV. Conclusion

Because MacNeil has not carried its burden of making a *prima facie* case for personal jurisdiction, the court grants C.A.'s motion to dismiss.

ENTER:

/s/
JOAN B. GOTTSCHALL
United States District Judge

DATED: September 22, 2011