UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MACNEIL AUTOMOTIVE PRODUCTS, LTD.,<br><br>　　　　　Plaintiff,<br><br>　　　　v.<br><br>CANNON AUTOMOTIVE LTD., f/k/a CANNON RUBBER LTD., AUTOMOTIVE DIVISION; C.A. HOLDINGS, plc; and CAH ESTATES (1) LIMITED; United Kingdom Companies,<br><br>　　　　　Defendants. | Judge Joan B. Gottschall<br><br>Case No. 08 C 0139 |

### MEMORANDUM OPINION & ORDER

Plaintiff MacNeil Automotive Products Limited ("MacNeil") sued Cannon Automotive Limited ("Cannon"), C.A. Holdings, plc ("C.A. Holdings"), and CAH Estates (1) Limited ("CAH Estates") over defective automobile floor mats produced by Cannon and supplied by MacNeil to auto manufacturers. Now before the court is the motion of C.A. Holdings and CAH Estates to dismiss MacNeil's Third Amended Complaint on grounds of *forum non conveniens* and for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2). For the reasons explained below, the motion to dismiss on grounds of *forum non conveniens* is denied, and the motion to dismiss pursuant to Rule 12(b)(2) is denied as to CAH Estates. The court will conduct an evidentiary hearing to resolve the issue of jurisdiction over C.A. Holdings.

### I. BACKGROUND

MacNeil, an Illinois corporation, manufactures and supplies automotive accessories such as floor liners and mats for various automobile manufacturers. Cannon, an English corporation,

also manufactures and supplies rubber floor mats for automobiles. C.A. Holdings, incorporated in England, is Cannon's parent corporation. CAH Estates is a U.K. holding company and, like Cannon, is a wholly-owned subsidiary of C.A. Holdings.

**A. Allegations in the Third Amended Complaint**

According to the Third Amended Complaint, Mr. Edward Atkin and his family own almost all of the shares in both Cannon and C.A. Holdings, and Cannon is wholly owned and controlled by C.A. Holdings. Most of the officers and directors of Cannon and C.A. Holdings are identical. From his office at C.A. Holdings, Mr. Atkin runs Cannon's daily operations and exercises oversight over its management. Cannon has no significant assets and owes significant debts to C.A. Holdings. C.A. Holdings has acted as if Cannon's assets were its own, removing assets from Cannon and transferring them to C.A. Holdings for inadequate consideration. MacNeil further alleges that C.A. Holdings's other subsidiaries were created to hold and manage assets improperly transferred from Cannon. Cannon allegedly transferred a substantial real estate asset to CAH Estates for no consideration. The transferred property constituted substantially all of Cannon's assets, and Cannon was insolvent after the transfer.

Counts I-VII of the Third Amended Complaint are against Cannon; those counts are discussed in the court's opinion of October 26, 2012. *See MacNeil Auto. Prods., Ltd. v. Cannon Auto. Ltd.*, No. 08 C 0139, 2012 WL 5306281 (N.D. Ill. Oct. 26, 2012). In the Third Amended Complaint, MacNeil alleges in count VIII that C.A. Holdings is the alter ego of Cannon and should be held jointly and severally liable in the event that MacNeil secures a judgment against Cannon. MacNeil alleges that the defendants have inadequately capitalized Cannon, have failed to follow corporate formalities, have failed to perform expected duties of directors in the best interests of Cannon, have used Cannon as a façade and trading vehicle for the operations and

benefit of C.A. Holdings and its other subsidiaries, and have removed substantial assets from Cannon and placed them with other wholly-owned and controlled subsidiaries.

In count IX of the complaint, MacNeil alleges that C.A. Holdings exerted total control over the operations and business of Cannon such that it essentially was doing business through Cannon. C.A. Holdings, according to MacNeil, should be held jointly and severally liable in the event that MacNeil secures a judgment against Cannon.

Counts X and XI allege that Cannon transferred property to CAH Estates in violation of the Illinois Uniform Fraudulent Transfer Act ("IUFTA"), 740 Ill. Comp. Stat. 160/1, et seq. MacNeil alleges that Cannon was a debtor and that MacNeil was a creditor within the meaning of the IUFTA. Count X alleges that the transfer was made with the intent to hinder, delay or defraud MacNeil. MacNeil alleges that CAH Estates, the transferee, received the transfer in bad faith. Count XI alleges that Cannon did not receive reasonably equivalent value in exchange for the transfer, that Cannon was insolvent at the time of the transfer or as a result of the transfer, and that C.A. Holdings and CAH Estates were aware or had reasonable cause to believe that Cannon was insolvent.

MacNeil alleges that this court has personal jurisdiction over C.A. Holdings as it is the alter ego of Cannon, and due to its substantial control over Cannon. MacNeil further alleges that the court has personal jurisdiction over both C.A. Holdings and CAH Estates due to their participation in a fraudulent transfer of Cannon's assets in violation of Illinois law.

**B. Procedural History**

C.A. Holdings previously moved to dismiss the claims against it in MacNeil's Second Amended Complaint for lack of personal jurisdiction. C.A. Holdings argued that it was merely a holding company that had no contact with the United States. The court granted that motion on

September 22, 2011, but then reconsidered its decision and vacated the order on June 22, 2012. *MacNeil Auto. Prods., Ltd. v. Cannon Auto. Ltd.*, No. 08 C 0139, 2012 WL 2396121 (N.D. Ill. June 22, 2012). The court stated that it would hold an evidentiary hearing on the question of jurisdiction and ordered the parties to confer as to what discovery was necessary. *Id.* at *4. No date for an evidentiary hearing as to jurisdiction was set. MacNeil then filed a Third Amended Complaint on June 29, 2012, adding CAH Estates as a third defendant. (Third Am. Compl., ECF No. 369.) C.A. Holdings and CAH Estates moved to dismiss the Third Amended Complaint on August 17, 2012. (Mot. Dismiss, ECF No. 410.)

Proceeding before the magistrate judge for discovery, MacNeil moved to compel discovery requests on August 31, 2012. (Mot. Compel Disc., ECF No. 420.) That motion remains pending after numerous status hearings before the magistrate judge, although the magistrate judge directed the parties to meet and confer to resolve their discovery disputes. MacNeil filed a status report on discovery matters on November 2, 2012, stating its view that the defendants had failed to provide information regarding the transfer of property from Cannon to CAH Estates, minutes of meetings related to the issue of corporate formalities, and communications from company employees and Edward Atkin. MacNeil further argued that it is entitled to see a privilege log regarding documents the defendants are withholding on the basis of alleged privilege. (Status Report Nov. 2, 2012, ECF No. 448.)

## II. LEGAL STANDARD

The court's order of June 22, 2012, discussed at some length the nature of a plaintiff's burden when faced with a motion to dismiss for lack of personal jurisdiction pursuant to Rule 12(b)(2). The plaintiff bears the burden to establish personal jurisdiction. *MacNeil*, 2012 WL 2396121, at *2 (citing *Central States, S.E. & S.W. Areas Pension Fund v. Reimer Express World*

*Corp.*, 230 F.3d 934, 939 (7th Cir. 2000)). The court explained that the plaintiff must first make a *prima facie* showing of personal jurisdiction, and that, in determining whether the plaintiff had done so, "the district court should consider the plaintiff's well-pleaded allegations as true, and should also consider affidavits or other evidence submitted by the defendant in opposition to the exercise of jurisdiction." *Id.* at *3 (citing *Tamburo v. Dworkin*, 601 F.3d 693, 700 (7th Cir. 2010)). Then, should the plaintiff succeed in making out a *prima facie* showing, the court must consider whether the defendant has put material facts into dispute; if so, the court must hold an evidentiary hearing. *Id.* (citing *Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 713 (7th Cir. 2002)).

### III. ANALYSIS

#### A. *Forum Non Conveniens*

The common law doctrine of *forum non conveniens* allows a federal district court to dismiss a suit over which it would normally have jurisdiction in order to best serve the convenience of the parties and the ends of justice. *Clerides v. Boeing Co.*, 534 F.3d 623, 627-28 (7th Cir. 2008). To merit dismissal, "the plaintiff's chosen forum must be 'oppressive and vexatious to the defendant, out of all proportion to the plaintiff's convenience.'" *In re Bridgestone/Firestone, Inc.*, 420 F.3d 702, 703 (7th Cir. 2005) (quoting *In re Ford Motor Co.*, 344 F.3d 648, 651 (7th Cir.2003)).

A threshold requirement for any *forum non conveniens* dismissal is the existence of an alternative forum that is both "available" and "adequate." *Kamel v. Hill-Rom Co., Inc.*, 108 F.3d 799, 802 (7th Cir. 1997). MacNeil concedes, and the court agrees, that England is an adequate alternative forum: the parties are amenable to process there, and MacNeil would not be deprived of all remedies were it required to proceed in England. *See Bridgestone*, 420 F.3d at 704.

5

If an adequate alternative forum exists, the district court should consider whether dismissal would serve the private interests of the parties and the public interests of the alternative forums. *Id.* at 803. Several private and public interest factors guide this analysis:

> The private interest factors that a court may consider include "the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive." . . . . The public interest factors include the administrative difficulties stemming from court congestion; the local interest in having localized disputes decided at home; the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action; the avoidance of unnecessary problems in conflicts of laws or in the application of foreign law; and the unfairness of burdening citizens in an unrelated forum with jury duty.

*Clerides*, 534 F.3d at 628 (citing *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508-09 (1947)). "[U]nless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." *Gulf Oil*, at 508.

In evaluating the private factors in this case, the court does not begin from a clean slate, but considers the history of these proceedings. Although the fraudulent transfer claims against CAH Estates are new, this case has been proceeding in this forum since January 2008. Discovery has been substantially completed, and the parties were directed several months ago to engage in jurisdictional discovery. Thus, although relevant documents and witnesses are in England, Cannon should in theory have already provided MacNeil with many of the relevant documents. Many key witnesses are likely to be employees and officers of the defendant companies, and MacNeil has expressed its willingness to travel to England to take their depositions. MacNeil has already viewed what remains of Cannon's premises, and the real estate

involved in the alleged fraudulent transfer has been sold.[1] Finally, as to the cost and practicality of trial, the case against Cannon will be tried here regardless of the fate of the claims against C.A. Holdings and CAH Estates. The court finds that the private factors weigh against dismissal.

Turning to the public factors, the court first notes that Illinois has at least as much interest in a case that involves alleged harm to an Illinois corporation as does England. Even if English courts are less congested—a matter the parties dispute—the court does not believe the case would proceed more quickly in another forum, given that this court has already undertaken significant work to become familiar with many of the issues presented. And as the case against Cannon will remain in this forum, the burden of jury duty on American citizens is irrelevant.

Cannon argues that the governing law makes England a more convenient forum for this action. It claims that English law will govern the fraudulent transfer claim and the alter-ego and substantial-control theories of liability, that the allegations against CAH Estates stem from the transfer of assets between two U.K. companies, and that any decision as to the claims of fraudulent transfer would have to be enforced in an English court. The court previously held that MacNeil's breach-of-contract and conversion claims against Cannon would be governed by Illinois law. (Order July 16, 2009, ECF No. 70.) The parties disagree as to whether English or Illinois law should be applied with regard to MacNeil's other claims.

The potential complexity involved in applying foreign law in this case does not outweigh the other factors favoring MacNeil's position. While this court might have to apply English law—a question on which the court will reserve judgment, fraudulent conveyances and alter-ego liability are familiar concepts that the court could likely analyze without undue difficulty. Moreover, the court may need to apply some combination of Illinois and English law: English

---

[1] MacNeil claims there is no need to appraise that property, given that a sale price has been established. The defendants argue that they will need to inspect the site—but as the defendants are in England, that should not present them with great difficulties.

law with respect to veil piercing; Illinois law with respect to jurisdiction and the contract and conversion claims against Cannon. (Defs.' Mem. Supp. Mot. Dismiss 7 n.4, ECF 422-1.)

The court concludes that dismissal of the claims against CAH Estates and C.A. Holdings on grounds of *forum non conveniens* would be impractical and inequitable, and that the defendants have not overcome the strong presumption in favor of the plaintiff's choice of forum. *See Gilbert*, 330 U.S. at 508.

## B. Personal Jurisdiction

Illinois' long-arm statute allows the exercise of jurisdiction over nonresident defendants if it would be allowed under either the Illinois Constitution or the United States Constitution; the Seventh Circuit has held that there is no material difference between the two standards. *Mobile Anesthesiologists, LLC v. Anesthesia Assocs. of Houston Metroplex, PA*, 623 F.3d 440, 443 (7th Cir. 2010); *see also* 735 Ill. Comp. Stat. 5/2–209(c). The court must decide whether the exercise of personal jurisdiction over C.A. Holdings and CAH Estates comports with federal due process.

Personal jurisdiction can be general or specific, depending on the extent of the defendant's contacts with the forum. *See Tamburo*, 601 F.3d at 701. Here, there is no dispute as to whether the court has jurisdiction over Cannon, but the court has no general jurisdiction over C.A. Holdings and CAH Estates, because they have not directly "purposefully avail[ed]" themselves of the benefits and protections of conducting activities in Illinois. *See Hanson v. Denckla*, 357 U.S. 235, 253 (1958). In the Third Amended Complaint, MacNeil asserts that there are three bases for the court's exercise of jurisdiction over C.A. Holdings and CAH Estates: (1) C.A. Holdings is the alter ego of Cannon, (2) C.A. Holdings exercises substantial control over Cannon, and (3) Cannon and C.A. Holdings fraudulently transferred real estate to CAH

Estates, in violation of the IUFTA. The first two bases are nearly identical to those asserted in the Second Amended Complaint; the third is a new theory of liability.

1. <u>Alter Ego and Substantial Control Theories</u>

"'Illinois law governs the analysis where a party uses veil piercing to establish personal jurisdiction.'" *Poulsen Roser A/S v. Jackson & Perkins Wholesale, Inc.*, No. 10 C 1894, 2010 WL 3419460, at *3 (N.D. Ill. Aug. 26, 2010) (quoting *Old Orchard Urban Ltd. P'ship v. Harry Rosen, Inc.*, 904 N.E.2d 1050, 1061 (Ill. App. Ct. 2009)). In Illinois, to prove that a parent corporation is the alter ego of a subsidiary, a party "'must show that (1) there is such a unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist; and (2) circumstances are such that adhering to the fiction of a separate corporate existence would promote injustice or inequity.'" *Int'l Fin. Servs. Corp. v. Chromas Techs. Canada, Inc.*, 356 F.3d 731, 736 (7th Cir. 2004) (quoting *Melko v. Dionisio*, 580 N.E.2d 586, 594 (Ill. App. Ct. 1991) (emphasis omitted)).

As summarized in Part II, the court's June 22, 2012, order explained that the plaintiff bears the burden to establish personal jurisdiction. *MacNeil*, 2012 WL 2396121, at *2. Should the plaintiff make a *prima facie* showing of jurisdiction, the court must consider whether the defendant has put material facts into dispute; if so, the court must hold an evidentiary hearing. *Id.* at *3. The court concluded that in this case, the facts alleged in MacNeil's Second Amended Complaint, if taken as true, would "establish a *prima facie* case of personal jurisdiction" over C.A. Holdings. *Id.* Factual disputes concerning Cannon's undercapitalization and observance of corporate formalities necessitated an evidentiary hearing. *Id.* at 4.[2]

---

[2] In its memorandum in support of the motion to dismiss, Cannon states that the court "accept[ed] that MacNeil had failed to make out a prima facie case" for personal jurisdiction, and that the court "provisionally rejected" MacNeil's alter ego and substantial control theories. (Defs.' Mem. Supp. Mot. Dismiss 2-3, ECF 422-1.) As the preceding summary of the court's order makes clear, that is not true.

Cannon argues that MacNeil has alleged additional facts in its Third Amended Complaint that demonstrate that it has failed to make out a *prima facie* case of personal jurisdiction over the defendants. The court disagrees. As to C.A. Holdings, MacNeil makes the same allegations that it made in the Second Amended Complaint: that Cannon is undercapitalized, that C.A. Holdings transferred Cannon's assets to its other subsidiaries without adequate consideration, that C.A. Holdings failed to follow corporate formalities and failed to perform the expected duties of directors in the best interests of Cannon, and that Cannon was used as a façade and trading vehicle for the benefit of C.A. Holdings and its other subsidiaries. The court held that these allegations, if true, "would warrant corporate-veil piercing and thus establish a *prima facie* case of personal jurisdiction." *Id.* at *4. Although the new complaint included additional facts about Cannon and C.A. Holdings's corporate forms, those new allegations do not resolve in Cannon's favor disputed questions as to whether veil-piercing is warranted.

Cannon further argues that the Third Amended Complaint makes the court's June 22, 2012, order "moot." (Defs.' Mem. Supp. Mot. Dismiss 2.) But the new complaint presents allegations similar to those addressed by the earlier opinion, and the court will adhere to its previous reasoning. An evidentiary hearing is required to address material facts in dispute as to jurisdiction over C.A. Holdings.

2. Fraudulent Transfer Theory

MacNeil argues that in transferring a property asset for inadequate consideration, C.A. Holdings and CAH Estates committed a tortious act directed at Illinois that caused an injury in Illinois. Specific jurisdiction exists where a controversy is related to a defendant's contacts with a forum. *Hyatt*, 302 F.3d at 713. The Supreme Court has found specific jurisdiction over a defendant to exist where tortious activity outside the forum was directed at a resident of the

10

forum, and the effect of that conduct was felt within the forum. *See Calder v. Jones*, 465 U.S. 783, 789-90 (1984). In *Calder*, a Florida reporter wrote an allegedly defamatory story about a California resident, who filed suit in California. Even though the alleged conduct occurred entirely in Florida, the Court found that the intentional and allegedly tortious conduct was aimed at California because the defendant knew that the brunt of the injury would occur there. The Court concluded that the defendant could "reasonably anticipate being haled into court" in California. *Id*. at 790.

The Seventh Circuit has subsequently stated that "a defendant's intentional tort creates the requisite minimum contacts with a state only when the defendant *expressly aims* its actions at the state with the knowledge that they would cause harm to the plaintiff there." *Mobile Anesthesiologists*, 623 F.3d at 445 (emphasis added) (holding there was no jurisdiction where defendant registered domain name similar to plaintiff's registered trademark, but was unaware at the time that the trademark existed). Thus, more is required to establish jurisdiction than the fact that the plaintiff resided in the forum state and felt the effects of the defendant's conduct there. *Id.* at 447.

C.A. Holdings and CAH Estates argue that the fact that real estate was transferred between two English companies, Cannon and CAH Estates, does not create any contact with Illinois, because the acts occurred entirely in England. (Defs.' Mem. Supp. Mot. Dismiss 19.) But in so arguing, the defendants ignore *Calder* and its progeny. In this case, MacNeil has alleged that the fraudulent transfer of assets was made with the intent to hinder, delay or defraud MacNeil, as Cannon's creditor. The facts as alleged by MacNeil satisfy the "express aiming" requirement, because the transfer was made with the knowledge that it would prevent Cannon

from satisfying its obligations to MacNeil. As CAH Estates was a primary participant in an alleged wrongdoing expressly aimed at an Illinois resident, jurisdiction over it is proper.

As Cannon points out, however, no property was transferred from Cannon to C.A. Holdings. Thus, jurisdiction over C.A. Holdings can only be established through the alter ego or substantial control theories discussed above. And, as previously stated, given that material facts are in dispute as to whether C.A. Holdings is the alter ego of or exercised substantial control over either Cannon or CAH Estates, an evidentiary hearing is required to determine whether jurisdiction may be established on either of those bases.

### III. CONCLUSION

The court denies the defendants' motion to dismiss the Third Amendment Complaint on grounds of *forum non conveniens*, and it denies CAH Estates's motion to dismiss the complaint pursuant to Rule 12(b)(2). The court will hold an evidentiary hearing to determine whether jurisdiction over C.A. Holdings is proper. MacNeil contends that to date, Cannon has not substantially or substantively responded to MacNeil's jurisdictional discovery requests, nor has MacNeil had the opportunity to depose witnesses. The court will schedule the evidentiary hearing once these issues are resolved.

ENTER:

/s/
JOAN B. GOTTSCHALL
United States District Judge

DATED: November 30, 2012