Order Form (01/2005)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Joan B. Gottschall | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 08 C 0139 | **DATE** | 2/15/2013 |
| **CASE TITLE** | MacNeil Automotive Prods. Ltd. vs. Cannon Automotive Ltd., et al | | |

**DOCKET ENTRY TEXT**

Defendant's Motion for a Bifurcated Trial [475] is denied.

■[ For further details see text below.]   Docketing to mail notices.

## STATEMENT

    Plaintiff MacNeil Automotive Products Limited ("MacNeil") sued Cannon Automotive Limited ("Cannon"), C.A. Holdings, plc ("C.A. Holdings"), and CAH Estates (1) Limited ("CAH Estates") over allegedly defective automobile floor mats produced by Cannon and supplied by MacNeil to auto manufacturers. C.A. Holdings, incorporated in England, is Cannon's parent corporation. CAH Estates is a U.K. holding company and, like Cannon, is a wholly-owned subsidiary of C.A. Holdings. Now before the court is Cannon's motion to bifurcate trial of the claims against Cannon and those against C.A. Holdings and CAH Estates.

    Counts I-VII of MacNeil's Third Amended Complaint are against Cannon (count III, a promissory-estoppel claim, has been dismissed without prejudice). These counts are related to alleged defects in mats supplied to MacNeil by Cannon, and to Cannon's alleged conversion of MacNeil's tooling.

    The remaining counts are related to whether MacNeil can recover damages it may be owed by Cannon from the other defendants. MacNeil alleges in count VIII that C.A. Holdings is the alter ego of Cannon and should be held jointly and severally liable in the event that MacNeil secures a judgment against Cannon. In count IX of the complaint, MacNeil alleges that C.A. Holdings exerted total control over the operations and business of Cannon, such that it essentially was doing business through Cannon. Counts X and XI allege that Cannon transferred property to CAH Estates in violation of the Illinois Uniform Fraudulent Transfer Act ("IUFTA"), 740 Ill. Comp. Stat. 160/1, et seq. Count X alleges that the transfer was made with the intent to hinder, delay or defraud MacNeil, and that CAH Estates, the transferee, received the transfer in bad faith. Count XI alleges that Cannon did not receive reasonably equivalent value in exchange for the transfer, that Cannon was insolvent at the time of or as a result of the transfer, and that C.A. Holdings and CAH Estates were aware or had reasonable cause to believe that Cannon was insolvent.

    Federal Rule of Civil Procedure 42(b) states, in relevant part, that "[f]or convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims." Fed. R. Civ. P. 42(b). Courts have broad discretion in deciding whether to bifurcate claims and try them separately. *Krocka v. City of Chi.*, 203 F.3d 507, 516 (7th Cir. 2000). To bifurcate claims, a court must determine if separate trials would avoid prejudice to a party or serve

| STATEMENT |
|---|

the purpose of judicial economy, though only one of these criteria need be met. *Houseman v. U.S. Aviation Underwriters*, 171 F.3d 1117, 1121 (7th Cir. 1999); *MCI Commc'ns Corp. v. Am. Tel. & Tel. Co.*, 708 F.2d 1081, 1166 (7th Cir. 1983). Courts have considered various factors such as "judicial efficiency, possibility of needless delay, potential juror confusion, the timing of the request for bifurcation, whether any filing delay was tactical, the overlap of evidence and witnesses between the two trials, and prejudice to each party." *Trading Techs. Int'l v. eSpeed, Inc.*, 431 F. Supp. 2d 834, 838 (N.D. Ill. 2006).

The court first considers whether bifurcation would serve the purpose of judicial economy. Cannon argues that counts I-VII are factually separate from the remaining counts in MacNeil's Third Amended Complaint, and that the former counts are ready for trial, while it will be several years before the other counts reach that stage. Cannon further argues that the latter counts will become moot if MacNeil loses counts I-VII, or if Cannon satisfies a judgment on those counts.

Courts' "judicial economy" analysis often hinges on whether the need to try certain claims will be obviated by the trial of others. *See, e.g.*, *Carr v. City of N. Chi.*, 2012 WL 5463890, at *4 (N.D. Ill. Nov. 8, 2012) (bifurcating trial of *Monell* claim against city where recovery depended on individual officer's violations of constitutional rights, and city certified that it would be liable if the individual defendant committed such violations).

Cannon argues that the claims against C.A. Holdings and CAH Estates are contingent on whether MacNeil can prevail on its claims against Cannon, and on whether Cannon satisfies any judgment in MacNeil's favor. It is not evident to the court, however, that trial of the claims against Cannon would render a trial against C.A. Holdings and CAH Estates unnecessary. MacNeil has already partially prevailed on its conversion claims. On December 7, 2012, the court granted judgment in MacNeil's favor on its conversion claim against Cannon with respect to six tool sets that went missing between May 2010 and July 2012, with the amount of the judgment to be determined at trial.[1] On March 1, 2011, the court also limited the defenses that Cannon may offer to MacNeil's claims about defective mats. (Order Mar. 1, 2011, ECF No. 254.) Although Cannon has posted $800,000 with the court as security for a judgment secured by Cannon against MacNeil in England, MacNeil is requesting a judgment of not less than $4 million on its claims related to the mats, and $2.8 million on its conversion claim. Thus, it is by no means certain that Cannon will be able to satisfy a judgment in MacNeil's favor. And C.A. Holdings and CAH Estates certainly do not agree that they are liable for any judgment against Cannon.

The court concludes that it is likely, although not certain, that if the claims against Cannon are tried first, a second trial against C.A. Holdings and CAH Estates will remain necessary. Bifurcation would substantially delay that second trial. Moreover, the factual backdrop of the second trial would not be entirely distinct from that of the first. Furthermore, conducting two trials would place twice the burden on the court's resources. The court therefore concludes that bifurcation would not serve the interests of judicial economy.

As to prejudice, the court finds that any unfair prejudice Defendants might suffer if the claims are tried together will be minimal. Bifurcation is not warranted in order to save C.A. Holdings and CAH Estates from discovery burdens. The discovery required to determine whether this court has personal jurisdiction over C.A. Holdings overlaps substantially with that which is relevant to MacNeil's alter ego and control theories of liability,

| STATEMENT |
|---|

and likely with the discovery relevant to the fraudulent transfer claim against CAH Estates. A motion to compel jurisdictional discovery has been pending before the magistrate judge for several months, and written discovery as to jurisdictional issues should have already been tendered. Cannon acknowledges that two witnesses still need to be deposed in England regarding the mat and conversions claims, and the deposition testimony of these witnesses (or at least that of the head of Cannon) is likely to be relevant to all of the claims in this action. The court also believes that bifurcation would likely lead to unnecessary discovery disputes as to which information is discoverable at what stage of the proceedings, causing unnecessary delay of this action and sapping the court's time. Therefore, the fact that some additional discovery is needed with respect to the claims against C.A. Holdings and CAH Estates does not warrant bifurcation of those claims.

Finally, although this point has not been argued by the parties, the court does not believe that a jury would be unable to separately evaluate the claims against the different defendants at trial. For all of these reasons, Cannon's motion for a bifurcated trial is denied.

[1] Admittedly, the parties' valuations of the tool sets in question are extremely far apart, and the court expresses no opinion as to whether the tool sets are worth thousands or millions of dollars.