UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MACNEIL AUTOMOTIVE PRODUCTS LIMITED, an Illinois corporation, <br><br> Plaintiff, <br><br> v. <br><br> CANNON AUTOMOTIVE LIMITED, f/k/a CANNON RUBBER LIMITED, AUTOMOTIVE DIVISION, C.A. HOLDINGS, PLC; and CAH ESTATES (1) LIMITED, United Kingdom Companies, <br><br> Defendants. | Case No. 08 CV 0139 <br><br> Judge Joan B. Gottschall |

**MEMORANDUM OPINION & ORDER**

Plaintiff MacNeil Automotive Products Limited sued Defendant Cannon Automotive Limited over defective automobile floor mats produced by Cannon and supplied by MacNeil to auto manufacturers. Cannon filed a counterclaim against MacNeil alleging breach of contract.

MacNeil asks the court to enter partial summary judgment in its favor as to liability on counts I, II, IV, V, and VI of its Third Amended Complaint and on Cannon's counterclaim. For the reasons discussed below, MacNeil's motion for partial summary judgment on these claims is granted in part and denied in part. MacNeil's motion for summary judgment on Cannon's counterclaim is granted.

**I. BACKGROUND**

The following facts are not in dispute unless otherwise indicated. MacNeil, a manufacturer and supplier of automotive products including floor liners and mats, is an Illinois corporation with its principal place of business in Downers Grove, Illinois. Cannon is a United

Kingdom corporation that manufactures and supplies automobile floor mats. Sometime in 1989, MacNeil and Cannon entered into an oral distribution agreement under which Cannon supplied automobile floor mats to MacNeil for resale to end users in the United States.

In 2004, Hyundai Motors America, Inc., an American affiliate of Korean auto manufacturer Hyundai Motors Corporation, awarded MacNeil a contract to supply Hyundai with composite floor mats, consisting of carpet adhered to a rubber base. The mats were to be installed in Hyundai Tucson vehicles delivered to U.S. ports to be sold in the United States. MacNeil engaged Cannon to manufacture and supply the composite floor mats. Cannon was aware that MacNeil intended to resell the composite mats to Hyundai.

MacNeil was concerned from the beginning of the Hyundai floor mat program about the fact that Hyundai wanted a combination rubber-carpet mat. Before the Hyundai program, Cannon shipped MacNeil defective product on some occasions, and MacNeil's requests for credit for the defective product were accepted by Cannon. In 2001, MacNeil supplied Land Rover with a rubber-carpet mat manufactured by Cannon and experienced adhesion defects with the mat. Although MacNeil claims that Cannon assured MacNeil that it had fixed the adhesion problems, Cannon denies that MacNeil either sought or received such assurances. In its manufacturing process, Cannon used glue, among other methods, to attach the carpet insert to the rubber base of the composite mats. Cannon supplied MacNeil with technical data on the glue.

Given the adhesion problems with the Land Rover mat, MacNeil expressed its reservations to Cannon and was assured that Cannon would do its best to avoid these defects. Cannon's corporate representative testified as follows:

> Q. [Y]ou testified earlier that David MacNeil, in early 2004, when the Hyundai program was first started and discussed with Cannon, had told you that he had reservations about doing a carpet rubber mat, correct?

> A. Yes.
>
> Q. What did you tell him in response?
>
> A. That I could understand his reservations; we'd never really proven ourselves with any of the carpet program[s], but we would try and do our best for him . . . .

(Robert Peacock Dep., ECF No. 557-1, at 30.)

Cannon sent its first shipment of Hyundai mats to MacNeil on July 23, 2004. The last shipment was sent on May 17, 2006. Altogether, Cannon delivered 98,895 mats to MacNeil for resale to Hyundai. Starting with the first shipment, the mats exhibited significant adhesion defects. They arrived at MacNeil's facility in Illinois with the carpet not fully glued to the rubber base. Cannon claims that these defects happened "from time to time;" MacNeil states that they happened "nearly always."

From July to September 2006, MacNeil could not come up with a solution to the adhesion problem, its attempted repairs were not working, and Cannon did not send any representative to the United States to try and help MacNeil address the situation despite MacNeil's pleas. On July 4, 2006, Hyundai informed MacNeil that the carpet adhesion issues were so bad that Hyundai was shutting off the entire program. Two days later, Hyundai sent MacNeil an email reaffirming the shut-off of the program and stated: "We have conducted an inspection of 50 mats at each port. We have results back from four of our ports today and 80-100% of the mats inspected exhibit carpet separation."

Ultimately, of the 98,895 mats that Cannon supplied to MacNeil for Hyundai vehicles, Hyundai returned 16,722 mats. Approximately 80,000 carpet-rubber Cannon-manufactured mats have been fitted to Hyundai motor vehicles, and the rate at which owners reject the mats as being in breach of warranty is approximately 0.3%.

MacNeil currently possesses 117 composite mats, and states that only 31 of these mats are non-defective. Cannon concedes that some Cannon-manufactured Hyundai mats arrived at MacNeil's facility with the carpet not fully glued to the rubber base.

In addition to its work for Hyundai, MacNeil has since 2001 supplied BMW with rubber floor mats manufactured by Cannon. In Fall 2005, and again in Fall 2006, MacNeil received shipments of rubber mats from Cannon containing some discolored mats. In March 2006, MacNeil contacted Cannon to report that it received a shipment of mats in which the back set of mats and the front set of mats did not match in color. At some time before October 2007, Cannon provided replacements or credits to BMW for all defective BMW mats. On October 9, 2007, MacNeil presented Cannon with a breakdown of a claim, including approximately $11,000 for damages stemming from defective BMW mats.

MacNeil's expert, John P. Garvey of Navigant, tendered a report stating that MacNeil lost significant profits from potential future sales to both Hyundai and BMW as a result of defect issues, in an amount totaling $9,400,000. Cannon admits that the report has been tendered, but it disputes the assumptions underlying Garvey's calculations and argues that the defects at issue did not cause the losses.

In October 2007, Cannon was in possession of some of MacNeil's tool sets, used for compression molding of rubber mats. On October 9, 2007, Cannon and MacNeil met in Illinois to discuss, among other matters, the parties' dispute about unpaid invoices owed to Cannon by MacNeil.[1] After that meeting, Cannon sued MacNeil in the United Kingdom under a breach of contract theory to collect the balance of the unpaid invoices. While that suit was pending, MacNeil filed suit in this court on January 7, 2008. On March 20, 2008, Cannon obtained a

---

[1] MacNeil contends that the unpaid invoices reflected credit due to MacNeil for defective mats.

judgment in the United Kingdom against MacNeil in the amount of £425,106.12. On March 25, 2008, Cannon's English solicitors sent MacNeil a letter offering to return MacNeil's tools if MacNeil paid the U.K. judgment.

Cannon successfully registered the U.K. judgment before the Circuit Court of DuPage County. MacNeil attempted to stay enforcement of the judgment in the state court pending resolution of its federal claims, but the state court denied its motion, stating that MacNeil's arguments would be more appropriately presented to the federal court. The Illinois Court of Appeals upheld that decision. On June 3, 2011, MacNeil filed an emergency motion asking this court to stay enforcement of the U.K. judgment, expressing concern that Cannon might have no assets to pay MacNeil should MacNeil prevail on its federal claims. (ECF No. 285.) In lieu of the court granting that motion, by agreement of the parties, MacNeil posted a bond with the court's registry on July 8, 2011, in the amount of $1,650,000.00, pursuant to Federal Rule of Civil Procedure 64 and Illinois' prejudgment attachment statute, pending the resolution of MacNeil's federal lawsuit and claim for a declaratory judgment of a setoff. (ECF No. 307.)

## II. MACNEIL'S ALLEGATIONS

In counts I, IV, V, and VI of its Third Amended Complaint, MacNeil alleges breach of contract and other violations of the Illinois Uniform Commercial Code (UCC), which governs contracts for the sale of goods in Illinois.

In count I, MacNeil claims that MacNeil and Cannon entered into an oral agreement in Spring 2004, whereby Cannon agreed to supply composite floor mats to MacNeil to be resold to Hyundai, and that MacNeil and Cannon also entered into an oral agreement whereby Cannon agreed to supply MacNeil with all-rubber floor mats for BMW. MacNeil alleges that the contracts are evidenced by Cannon's acceptance of MacNeil's purchase orders and shipment of

5

product to MacNeil. MacNeil further alleges that Cannon breached the contracts, as well as an implied covenant of good faith and fair dealing under the contracts, by delivering defective floor mats to MacNeil for both BMW and Hyundai vehicles and by failing to deliver the floor mats in a timely fashion.

In count IV, MacNeil alleges that by delivering defective floor mats, Cannon breached its express warranty to MacNeil that the carpet would properly adhere to the rubber floor mat, in violation of section 2-313 of the Illinois UCC, 810 Ill. Comp. Stat. 5/2-313. According to MacNeil, that warranty formed the basis of the bargain between MacNeil and Cannon.

In count V, MacNeil alleges that, through its sale of defective floor mats for the Hyundai and BMW projects, Cannon breached its implied warranty of merchantability to MacNeil, in violation of section 2-314 of the Illinois UCC, 810 Ill. Comp. Stat. 5/2-314. MacNeil alleges that Cannon warranted that the floor mats would be fit for the ordinary purposes for which such goods are used.

In count VI, MacNeil alleges that Cannon breached its implied warranty of fitness for particular purpose, in violation of section 2-315 of the Illinois UCC, 810 Ill. Comp. Stat. 5/2-315, by selling MacNeil floor mats that Cannon knew at the time of shipment did not meet MacNeil's, Hyundai's, or BMW's particular purpose for which the goods were required, when MacNeil was relying on Cannon's skill to furnish such suitable goods. MacNeil alleges that it reasonably and justifiably relied on Cannon's warranties and representations that Cannon's products would be free of defects, that the carpet would adhere to the rubber floor mat for the Hyundai vehicles, and that the colors of the mats would match for the BMW vehicles and would be consistent with a defined standard.

Additionally, in count II of the Third Amended Complaint, MacNeil seeks a declaration that MacNeil does not owe Cannon any monies for outstanding invoices for floor mats. These unpaid invoices were the subject of the action brought by Cannon against MacNeil in the United Kingdom, which resulted in a judgment in Cannon's favor in the amount of £425,106.12. MacNeil argues that, given the damages Cannon has caused MacNeil that form the subject of this action, it is entitled to a full set-off of the amount of the UK judgment.

### III. CANNON'S COUNTERCLAIM

Cannon filed a counterclaim against MacNeil alleging breach of contract. Cannon states that it supplied MacNeil with automotive floor mats from 1989 through 2007 pursuant to a distribution agreement between the parties. Cannon believes that it agreed to manufacture and store at least three months' worth of floor mats to facilitate its logistics with MacNeil.

The counterclaim states that an express or implied term of that distribution agreement required MacNeil to give Cannon three months' notice before stopping its orders from Cannon, and that MacNeil would pay for goods sold to it. Cannon argues that MacNeil breached its contract by failing to provide notice before stopping its orders in 2007. As a result, Cannon states that it lost three months' worth of sales and was left with a large supply of mats that it was unable to sell elsewhere.

### IV. LEGAL STANDARD FOR SUMMARY JUDGMENT

Summary judgment is appropriate when the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Smith v. Hope Sch.*, 560 F.3d 694, 699 (7th Cir. 2009). "[A] factual dispute is 'genuine' only if a reasonable jury could find for either party." *SMS Demag Aktiengesellschaft v. Material Scis. Corp.*, 565 F.3d 365, 368 (7th Cir. 2009). The court ruling on the motion construes all facts and

7

makes all reasonable inferences in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Summary judgment is warranted when the nonmoving party cannot establish an essential element of its case on which it will bear the burden of proof at trial. *Kidwell v. Eisenhauer*, 679 F.3d 957, 964 (7th Cir. 2012).

## V. ANALYSIS

**A.     BMW Mats**

MacNeil asks the court to enter partial summary judgment on liability in its favor with respect to its claims regarding the BMW mats. It argues, and Cannon concedes, that the only issue left to decide with respect to the BMW mats is the appropriate measure of damages.

Cannon responds that damages are a prima facie element of MacNeil's claims. *See, e.g.*, *Village of S. Elgin v. Waste Mgmt. of Ill., Inc.*, 810 N.E.2d 658, 669 (Ill. App. Ct. 2004) (breach of contract); *Zwicky v. Freightliner Custom Chassis Corp.*, 867 N.E.2d 527, 534 (Ill. Ct. App. 2007) (breach of express warranty and implied warranty of merchantability). Therefore, Cannon argues that the parties' disagreement over whether MacNeil is entitled to damages for the BMW mats precludes summary judgment. Damages are the only issue of material fact identified by Cannon that it believes would prevent summary judgment.

Cannon does not dispute any element of MacNeil's claim other than damages. Under these circumstances, partial summary judgment on the liability question is appropriate. *See NutraSweet Co. v. X-L Eng'g Corp.*, 933 F. Supp. 1409, 1423 (N.D. Ill. 1996) ("The court [grants partial summary judgment] as to the liability prong, but finds a genuine issue of material fact as to the attributable damages. The court defers to trial the issue of appropriate damages."), *aff'd*, 227 F.3d 776 (7th Cir. 2000).

8

The court grants MacNeil's motion for partial summary judgment on liability as to the BMW mats on Counts I (breach of contract), II (declaratory judgment), IV (breach of express warranty), V (breach of implied warranty of merchantability), and VI (breach of implied warranty of fitness for particular purpose) of the Third Amended Complaint.

**B.     Hyundai Mats**

MacNeil asks the court to enter partial summary judgment in its favor with respect to its claims regarding the Hyundai mats. It notes that over 73% of Hyundai mats in MacNeil's possession have some adhesion defects and argues that it was an "essential part of the bargain" that the carpet would properly adhere to the rubber. (Mot., ECF No. 556, at 13.) Accordingly, MacNeil argues that Cannon is liable for breach of contract and associated warranties and asks the court to enter partial summary judgment on liability as to Counts I, II, IV, V, and VI of the Third Amended Complaint, leaving the jury to determine damages.

Cannon responds that its contract with MacNeil did not require that the mats would be free from delamination issues. To the contrary, the parties knew that some delamination would occur. Cannon and MacNeil agree that "all Cannon agreed was that it would do its best." (Cannon Response Br., ECF No. 566, at 6; *see* Mot., ECF No. 556, at 4, 11.) MacNeil concedes that some defects are to be expected in any manufacturing process, including the one for the Hyundai mats. (*See* MacNeil Reply Br., ECF No. 568, at 4.)

MacNeil insists that "[t]he evidence is undisputed that Cannon was to manufacture a floor mat with the carpet *adhered to a rubber base*" (MacNeil Reply Br., ECF No. 568, at 4, emphasis in original; *see also* Mot., ECF No. 556, at 14), citing this court's memorandum opinion and order dated October 26, 2012. MacNeil is mistaken. The court's order found that MacNeil's contract with Hyundai involved floor mats consisting of carpet adhered to a rubber

9

base. (Mem. Op. & Order, Oct. 26, 2012, ECF No. 446, at 2.) The court made no findings about the scope of MacNeil's contract with Cannon.

MacNeil has presented insufficient evidence to establish as a matter of law that Cannon failed to do its best. A reasonable jury could find that the contract between MacNeil and Cannon required Cannon to "do its best" to limit delamination issues, and that Cannon did not breach the contract notwithstanding a high rate of adhesion defects. Accordingly, the court cannot grant MacNeil's motion for partial summary judgment on Cannon's breach of contract claim for the Hyundai mats.

Next, MacNeil asks the court to enter partial summary judgment as to liability on its claim for breach of an express warranty that the carpet would adhere to the rubber floor mat. At no point in its motion or accompanying statement of facts does MacNeil provide any evidence that Cannon made an express warranty that the carpet would adhere to the rubber floor mat. Instead, the undisputed facts reveal that Cannon stated it would do its best to avoid adhesion problems. No evidence indicates that Cannon told MacNeil that the mats would be free from delamination issues. MacNeil fails to show that the undisputed facts show the existence of an express warranty. Accordingly, the court denies its motion for partial summary judgment on breach of express warranty for the Hyundai mats.

MacNeil also asks the court to enter partial summary judgment as to liability for breaches of implied warranties of merchantability and suitability for a particular purpose. Specifically, MacNeil argues: "Per Count V, Cannon has breached its implied warranty of merchantability. Per Count VI, Cannon has breached its implied warranty of fitness for a particular purpose in that the carpet did not properly adhere to the rubber, which is the very purpose of a carpet-rubber composite mat." (Mot., ECF No. 556, at 13.)

Under Illinois law, "a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind." 810 Ill. Comp. Stat. 5/2-314(1). "A product breaches the implied warranty of merchantability if it is not fit for the ordinary purposes for which such goods are used." *Oggi Trattoria & Caffe, Ltd. v. Isuzu Motors Am., Inc.*, 865 N.E.2d 334, 340 (Ill. App. Ct. 2007) (internal quotation marks omitted). It is undisputed that Cannon was aware that MacNeil was going to resell the carpet-and-rubber floor mats to Hyundai, and that Hyundai informed MacNeil that over 80% of the mats it inspected had adhesion issues. The carpet adhesion issues were so bad that Hyundai decided to shut off the entire program. Ultimately, Hyundai returned all the composite mats in its possession to MacNeil. Based on these facts, no reasonable jury could find that the delaminated floor mats were fit to be resold as composite rubber-and-carpet floor mats to Hyundai. MacNeil is entitled to partial summary judgment as to liability for Cannon's breach of its implied warranty of merchantability.

Similarly, MacNeil is entitled to partial summary judgment as to liability for Cannon's breach of its implied warranty of fitness for a particular purpose. "Where the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods, there is unless excluded or modified under the next section an implied warranty that the goods shall be fit for such purpose." 810 Ill. Comp. Stat. 5/2-315. It is undisputed that Cannon was aware of the particular purpose for which MacNeil contracted with Cannon: to obtain composite rubber-and-carpet floor mats to resell to Hyundai. No reasonable jury could find that these mats, which Hyundai rejected because over 80% had delamination issues, would be fit for that purpose.

MacNeil is entitled to partial summary judgment as to liability for Cannon's breach of its implied warranty of fitness for a particular purpose.

MacNeil seeks partial summary judgment as to liability on its claim for a declaratory judgment that it "is entitled to a set-off to [sic] the UK foreign judgment in the amount of any damages that the jury finds MacNeil has suffered as a result of the Hyundai defects." (Mot., ECF No. 556, at 13.) MacNeil's superficial presentation does not explain why it is entitled to summary judgment on its claim. The moving party bears the initial burden of demonstrating that it is entitled to summary judgment, and MacNeil fails to meet that burden. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). MacNeil's motion for partial summary judgment on its claim is denied.

In summary, the court denies MacNeil's motion for partial summary judgment on its claims for breach of contract (Count I), declaratory judgment (Count II), and breach of express warranty (Count IV) with respect to the Hyundai mats. The court grants MacNeil's motion for partial summary judgment as to liability for its claims for breaches of the implied warranty of merchantability (Count V) and fitness for a particular purpose (Count VI).

C.  **Cannon's Counterclaim**

Cannon's counterclaim alleges that MacNeil failed to provide three months' notice before stopping its floor mat orders from Cannon. Cannon asserts that the parties agreed that Cannon would manufacture and store at least three months' worth of floor mats from which MacNeil's orders would be supplied. Cannon believes MacNeil breached an "express or implied term of the distribution agreement" between Cannon and MacNeil by failing to provide adequate notice before stopping its orders. (Am. Countercls., ECF No. 415, at 2.)

MacNeil argues that Cannon—and not MacNeil—terminated the parties' relationship. Cannon's operation manager testified in a deposition that "[t]he first notice of termination came from us" and that MacNeil "seemed surprised" about the termination. (Peacock Dep., ECF No. 557-2, at 34.) Cannon does not dispute this fact.

Moreover, Cannon presents no evidence that there was a three-month notice requirement—express or implicit—to terminate orders. Cannon argues that a fact-finder could infer a notice requirement from the parties' course of dealing, but it does not explain how its course of dealing with MacNeil "created a term that reasonable notice would be given by any party terminating the relationship." (Cannon Response Br., ECF No. 566, at 27.) Cannon cites Illinois's parol evidence rule, 810 Ill. Comp. Stat. 5/2-202, which provides that the terms of the parties' written agreement can be explained or supplemented by course of performance or course of dealing. That rule is inapplicable here; the parties had an oral distribution agreement. (Mem. Op. & Order, Oct. 26, 2012, ECF No. 446, at 2.) But even if course of dealing can supplement the parties' oral agreement, *see Capitol Converting Equip., Inc. v. LEP Transport, Inc.*, 965 F.2d 391, 396 (7th Cir. 1992), Cannon does not explain how a fact-finder could infer a three-month notice requirement based on the parties' course of dealing. Cannon does not allege that the parties gave each other a three-month termination notice during the course of their dealing, nor does it present evidence that similar contracts have a three-month termination notice requirement.

The court concludes that no reasonable jury could find that there was an explicit or implicit three-month notice requirement in MacNeil and Cannon's oral agreement. It is impossible for MacNeil to have breached a contract term that does not exist. MacNeil is therefore entitled to summary judgment on Cannon's counterclaim for breach of contract.

## VI. CONCLUSION

For the reasons discussed above, MacNeil's motion for partial summary judgment as to liability is granted with respect to the BMW mats and granted in part and denied in part with respect to the Hyundai mats. MacNeil's motion for summary judgment on Cannon's counterclaim is granted.

ENTER:

/s/
JOAN B. GOTTSCHALL
United States District Judge

DATED: July 11, 2014